## Ex parte Tobias Watkins.

*Habeas corpus.* W., at May term 1829 of the circuit court of the district of Columbia, was tried upon three indictments for offences against the United States, and was sentenced on each to imprisonment for three months, and to pay a fine, on one indictment of two thousand dollars, on another of seven hundred and fifty dollars, and on another of three hundred dollars, with the costs of prosecution. No award was made on either judgment, that W. should stand committed until the sentence be performed. W. was, under these sentences, committed to jail by the then marshal of the district, and upon the expiration of his office, and the appointment of his successor, after the term of W.'s imprisonment was exhausted, he was delivered over in jail, with other prisoners, to his successor, and has ever since been detained in custody. The time of imprisonment expired on the 14th May 1830. On the 3d September 1829, the district attorney sued forth three several writs of fieri facias to levy the fines, which were returned " nulla bona." On the 16th February 1830, three writs of capias ad satisfaciendum were issued against W. for the fines, returnable to the next term of the court in May, which writs commanded the marshal to take W., and him safely keep, and have his body before the circuit court on the first Monday of the term, to satisfy the United States for the fines and costs, &c. No return was made to the court by the marshal, according to the exigency of the writ, and nothing further was done until the 10th day of January 1833; when the late marshal of the district made a return to each writ of capias ad satisfaciendum " cepi and delivered over to my successor in office." W. petitioned the court for a habeas corpus, asserting that he was illegally confined. The court awarded the writ; and on the return thereof, discharged the prisoner from confinement.

This court has authority to award a habeas corpus upon this state of facts. As it is the exercise of the appellate power of the court to award the writ, it is within its jurisdiction to do so. It is revising the effect of the process of the circuit court under which the prisoner is detained; and is not the exercise of original jurisdiction.

The eighth amendment to the constitution of the United States, which declares that excessive fines shall not be imposed, is addressed to courts of the United States exercising criminal jurisdiction, and is doubtless mandatory to, and a limitation upon their discretion. But this court have no appellate jurisdiction to revise the sentences of inferior courts, in criminal cases; and cannot, even if the excess of the fine was apparent on the record, reverse the sentence.

The prisoner could not be detained in jail longer than the return day of the process; and he should then have been brought into the circuit court and committed, by order of the court, to the custody of the marshal, for pay-

ment of the fine. This not having been done, by the law of Maryland, which is the law of the part of the district of Columbia in which is situated the city of Washington, he is entitled to be discharged from confinement under the process.

TOBIAS WATKINS, by Mr Brent, his counsel, presented a petition to the court, setting forth that at the term of the circuit court of the district of Columbia, holden for the county of Washington, on the first Monday of May 1829, certain presentments and indictments were found against him, upon three of which indictments trials were had and verdicts passed against him, and judgments on such verdicts respectively were pronounced by the court, purporting to condemn him to certain terms of imprisonment, and also to the payment of certain pecuniary fines and costs, for the supposed offences therein. For the nature of those proceedings the petitioner referred to the exemplifications filed in this court, with an application made to the court at January term 1830, 3 Peters's Rep. 193. The petition stated that immediately after the rendition of such judgments, and in pretended execution of the same, on the 14th day of August 1829, he, the petitioner, was committed to the common jail of the county of Washington, and there remained until the terms of imprisonment imposed by the several judgments had expired, the same having expired on the 14th day of May 1830: and that ever since that time he has been, and still is detained in the criminal apartment of the prison, under the colour and pretence of authority, not only of the judgments, but of three certain writs issued on the 16th day of February 1830, by the clerk of the circuit court of Washington county, by special orders of the district attorney of the United States for the district of Columbia, as he has been informed and believes, at the request and by direction of the president of the United States. That he is illegally detained in prison by the authority of the said writs, as he is well advised; and avers that they give no authority for his commitment and detention, having been not only illegally and oppressively issued, but he has been by them deprived of the privilege secured to him by the laws of the land, to be released from imprisonment on the ground of his insolvency, and being unable to pay his debts.

[Ex parte Watkins.]

The writs gave no authority for his present detention and imprisonment, for a longer period than the first Monday in May 1830; since which time, even admitting the writs to have been legally issued, his imprisonment has been illegal and oppressive, and without any authority whatever. That the fines are excessive, and as such, contrary to the laws of the land, as he was at the time they were imposed, and ever since has been unable to pay the same, and it is not the law of the land that a citizen shall be confined for life for fines which he cannot pay. He has been refused the benefit of the insolvent laws, and if relief cannot be obtained from this court; from his inability to pay the fines he will be confined for life.

The petition " prays the benefit of the writ of habeas corpus to be directed to the marshal of the district of Columbia, in whose custody, as keeper of said jail, your petitioner is, commanding him to bring before your honours the body of your petitioner, together with the cause of his commitment, and especially commanding him to return with said writ, the record of the proceedings upon said indictments, with the judgments thereupon, and the several writs under the supposed authority of which your petitioner is now detained ; and to certify whether your petitioner be not actually imprisoned and detained; as aforesaid, in a criminal apartment of said jail, by the supposed authority, and in virtue of said several writs."

The court granted a rule to show cause returnable on a subsequent day of the term.

The case was argued by Mr Brent and Mr Coxe, for the relator ; and by Mr Taney, attorney-general for the United States.

Mr Justice STORY delivered the opinion of the Court.

This is an application to the court to award a writ of habeas corpus to bring up the body of Tobias Watkins, a prisoner, asserted to be illegally confined in the common jail of Washington county in the district of Columbia, under process of execution issued from the circuit court of the United States for the same district. A rule was served upon the attorney-general, to show cause why the application should not be granted; and the cause has been fully argued upon the return of that

rule. It is admitted that all the facts existing in the case have been laid before the court, exactly as they would appear if the habeas corpus had been duly awarded and returned; so that the judgment which the court are called upon to pronounce, is precisely that which ought to be pronounced upon a full hearing upon the return to the writ of habeas corpus, and it has accordingly been so argued at the bar.

The material facts are as follows. Watkins was tried at the May term of the circuit court 1829, upon three several indictments found against him at that term for certain offences against the United States; and being found guilty, was upon each indictment sentenced to imprisonment for three calendar months, and to pay certain fines, to wit, on one indictment two thousand dollars, on another, seven hundred and fifty dollars, and on a third three hundred dollars, with costs of prosecution. There is no award in either of the judgments, that the prisoner stand committed until the sentence be performed. Under these sentences Watkins was immediately committed to jail by the then marshal of the district; and upon the expiration of his office, which was after the term of imprisonment was exhausted, and the appointment of a successor, he was delivered over in jail with other prisoners to his successor; and he has ever since been detained in custody. The terms of imprisonment awarded by the judgments expired on the 14th of May 1830.

On the 3d day of September 1829, the district attorney sued forth three several writs of fieri facias, to levy the aforesaid fines; upon which due return was made by the marshal of nulla bona. Upon the 16th of February 1830, the district attorney sued forth three several writs of capias ad satisfaciendum against Watkins to levy the same fines, which were all returnable to the then next May term of the circuit court. By these precepts the marshal is commanded to take Watkins, and him safely keep, so that he have his body before the circuit court on the first Monday of May then next, to satisfy unto the United States the fine, costs and charges. No return was made to the circuit court by the marshal according to the exigency of these writs; and nothing further appears upon the records and proceedings of the court until the 10th day of January 1833, when the late marshal of the district made a return

to each capias ad satisfaciendum as follows. "Cepi. Delivered over to my successor in office."

. Upon this state of the facts several questions have arisen and been argued at the bar ; and one, which is preliminary its nature, at the suggestion of the court. This is, whether, under the circumstances of the case, the court possess jurisdiction to award the writ. And upon full consideration we are of opinion that the court do possess jurisdiction. The question turns upon this, whether it is an exercise of original or appellate jurisdiction. If it be the former, then, as the present is not one of the cases in which the constitution allows this court to exercise original jurisdiction, the writ must be denied. Marbury v. Madison, 1 Cranch's Rep. 137, S. C. 1 Peters's Cond. Rep. 267. If the latter, then it may be awarded, since the judiciary act of 1789, ch. 20, sect. 14, has clearly authorized the court to issue it. This was decided in the case Ex parte Hamilton, 3 Dall. 17; Ex parte Bollman and Swartwout, 4 Cranch, 75; and Ex parte Kearney, 7 Wheat. Rep. 38. The doubt was whether, in the actual case before the court, the jurisdiction sought to be exercised was not original, since it brought into question, not the validity of the original process of capias ad satisfaciendum, but the present right of detainer of the prisoner under it. Upon further reflection, however, the doubt has been removed.

The award of the capias ad satisfaciendum must be considered as the act of the circuit court, it being judicial process, issuing under the authority of the court. The party is in custody under that process. He is then in custody, in contemplation of law, under the award of process by the court. Whether he is rightfully so, is the very question now to be decided. If the court should, upon the hearing, decide that the capias ad satisfaciendum justifies the present detainer, and should remand the prisoner, it would clearly be an exercise of appellate jurisdiction; for it would be a revision and confirmation of the act of the court below. But the jurisdiction of the court can never depend upon its decision upon the merits of a case brought before it ; but upon its right to hear and decide it at all. In Marbury v. Madison, 1 Cranch, 137, it was said, that it is the essential criterion of appellate jurisdiction that it

[Ex parte Watkins.]

revises and corrects the proceedings in a cause already instituted; and does not create that cause.

Tried by this criterion, the case before us comes in an appellate form, for it seeks to revise the acts of the circuit court. In Ex parte Bollman and Swartwout, 4 Cranch, 75, the prisoners were in custody under an order of commitment of the circuit court; and it was held, that an award of a writ of habeas corpus by the supreme court was an exercise of appellate jurisdiction. On that occasion the court said, so far as the case of Marbury v. Madison had distinguished between original and appellate jurisdiction, that which the court is asked to exercise is clearly appellate. It is the decision of an inferior court, by which a citizen has been committed to jail. Ex parte Hamilton, 3 Dall. 17, was a commitment under a warrant by a district judge; and the supreme court awarded a writ of habeas corpus to revise the decision, and admitted the party to bail. In Ex parte Burford, 3 Cranch, 448, the prisoner was in custody under a commitment by the circuit court for want of giving a recognizance for his good behaviour, as awarded by the court. The supreme court relieved him on a writ of habeas corpus. In all these cases the issuing of the writ was treated as an exercise of appellate jurisdiction; and it could make no difference in the right of the court to entertain jurisdiction, whether the proceedings of the court below were annulled or confirmed. Considering then, as we do, that we are but revising the effect of the process awarded by the circuit court, under which the prisoner is detained, we cannot say that it is the exercise of an original jurisdiction.

The grounds principally relied on to entitle the prisoner to be discharged are: First, that the fines imposed upon him are excessive, and contrary to the eighth amendment of the constitution; which declares, that excessive fines shall not be enforced. Secondly, that the prisoner could not be detained in jail on the capias ad satisfaciendum longer than the return day of the process; and he should then have been brought into the circuit court, and committed by order of the court to the custody of the marshal for payment of the fine: otherwise by the laws of Maryland (which is the law of this part of the district), he was entitled to his discharge.

The first point may be very shortly disposed of. The

eighth amendment is addressed to courts of the United States exercising criminal jurisdiction, and is doubtless mandatory to them and a limitation upon their discretion. But this court has no appellate jurisdiction to revise the sentences of inferior courts in criminal cases; and cannot, even if the excess of the fine were apparent on the record, reverse the sentence. And it may be added that if this court possessed such a jurisdiction, there is nothing on the record in this case, which establishes that at the time of passing judgment the present fines were in fact, or were shown to the circuit court to be excessive. This objection may therefore be dismissed.

The other ground is of far more importance and difficulty. At the common law, whenever a fine and imprisonment constitute a part of the judgment upon a conviction in a criminal case, the judgment, if the party is in court, is that he be committed to jail in execution of the sentence, and until the fine is paid. If he is not then in court, a special writ of capias pro fine issues against him; the exigency of which is, that his body be taken and committed to jail until the fine is paid(a). Unless such a committitur be awarded, he cannot be detained in jail in execution of the sentence. It is the warrant of the jailor, authorizing the detention of the prisoner. No capias ad satisfaciendum in the form appropriate to civil cases; where the exigency of the writ is to take the body of the party and him safely keep, so that the sheriff have his body before the court at the return day of the process with the writ; is ever issued or issuable. If, therefore, the present case were to be tried by the common law, the process of capias ad satisfaciendum, under which the prisoner is detained, would be wholly insufficient to justify his detention.

Let us see, then, how the case stands upon the laws of Maryland, by which, indeed, it is to be governed. The act of Maryland of the 20th of April 1777, ch. 6, which seems specially applicable to the recovery of pecuniary fines and forfeitures fixed by statute, declares, that if such fines and forfeitures shall be recovered by indictment, the court may either commit the offender to the public jail till payment to the sheriff. or

(a) See 1 Chitty's Crim. Law, ch. 16, p. 721; Dalton's Sheriff, ch. 33, p. 159; 4 Chitty's Crim. Law, ch. 16, p. 373.

order execution to levy the same on the offender's lands, goods or chattels. This act is not supposed to have any application to the present case. The act of 20th of April 1777, ch. 13, for the more speedy and effectual recovery of common law fines and forfeited recognizances, provides, that where any fine shall be enforced by any court of record for any common law offence on any person, it shall be lawful for the attorney-general or either of his deputies to order a writ of capias ad satisfaciendum, or a writ of fieri facias, to be issued for the recovery of the sum due thereon, on which writs such proceedings shall and may be had, as in cases where similar writs are issued on judgments obtained in personal suits. It may be here-stated, that writs of capias ad satisfaciendum in Maryland are the same in substance in their exigency as those prescribed in the common law. In another section of the act (sect. 4), there is a proviso that nothing therein contained shall be construed to extend to prevent the several courts, *as they might heretofore lawfully do*, from committing any person from the non-payment of any fine, if they shall deem it expedient so to do. This proviso completely establishes the antecedent practice in Maryland to have been like that at the common law, to commit the offender for payment of the fine, and leaves it at the discretion of the court to order it in any future case. By necessary implication it affirms, that without such order the offender is not detainable in jail for the fine.

Then came the act of 24th of December 1795, ch. 74; which, after reciting that doubts had arisen as to the issuing of a capias ad satisfaciendum for the recovery of fines and forfeitures, provides, that it shall be lawful for the attorney-general and his deputies ex-officio, and they are hereby *directed and required on application of the sheriff of the county*, to order writs of capias ad satisfaciendum to be issued for the recovery of all fines and forfeitures. Another section of the act declares it to be the duty of the sheriffs to return the writ of capias ad satisfaciendum to the courts, to which they are returnable at the term succeeding the issuing of the same; and wherever the sheriff shall make return, that he has taken the body of the party, he shall be obliged either to acknowledge in open court the receipt of the amount of the fine or forfeiture, or to produce

the body of the party to the court, to which the said writ shall
be returned; and in default thereof, the court, upon motion
of the attorney-general or his deputy, shall order judgment
against the sheriff for the amount of costs.

There is a prior act of the 25th of December 1789, ch. 42,
which after reciting that plaintiffs are often willing to grant
indulgence to defendants arrested on writs of capias ad satis-
faciendum, but doubts have arisen whether such indulgence
can be granted without depriving the plaintiffs of the benefits
of any further execution, provides that in case of an arrest of
the defendants on any capias ad satisfaciendum, if the plain-
tiffs *with the consent of the defendants* shall elect not to call the
execution during the term, at which it is returnable, the plain-
tiff may afterwards proceed against the defendant by a new
execution.     This statute has reference to the practice then ex-
isting in Maryland, for the sheriff, upon the return day of the
capias ad satisfaciendum, to produce the body of the defendant,
if arrested, and for the plaintiff then to pray him to be commit-
ted.     Although in its terms it applies to civil suits only ; yet
from its recognizing the course of practice in Maryland, it has
a material bearing upon the present controversy ; for the act
of 1777 expressly declares that on writs of capias ad satisfaci-
endum for fines, such proceedings shall be had as in cases
where similar suits of capias ad satisfaciendum are issued in
personal suits.     And, certainly, it is in entire conformity with
the exigency of the writ of capias ad satisfaciendum ; which
commands the sheriff at the return day to bring the party, if
arrested, into court.     Whether the practice under the capias
ad satisfaciendum in England is different, so that the party
may be detained in jail by the sheriff after the return day
without producing his body in court, and a committitur there-
on awarded by the court, it is not material to inquire ; since if
there be any discrepancy, the Maryland practice must govern.
The cases of Christie v. Goldsborough, 1 Harr. and M'H.
543, and West v. Hyland, 3 Harr. and John. Rep. 200 ; go
strongly to affirm the practice : and the latter certainly leads
to the conclusion, that if a party is arrested and brought into
court on the return day, and is not then prayed in commit-
ment, he is no longer to be detained in custody : at least that

case decides that a new capias ad satisfaciendum may issue against him, which presupposes, that he is not then deemed in custody upon the old one (*a*).

But the terms of the act of 1795, ch. 74 (as has been already seen), expressly require the writ of capias ad satisfaciendum for a fine to be returned into court on the return day ; and the fine either acknowledged to be paid, or the body of the party produced ; otherwise judgment may be entered up against the sheriff for the amount.    It is clearly then his duty to produce the body.    It is the very exigency of the writ ; and when produced, the sheriff has performed the whole duty required by the precept.    If the attorney-general wishes him to be committed, he is entitled to pray a commitment to be made by the court.    If he does not pray it, it is difficult to perceive upon what ground it can be maintained, that the party is any longer to be detained in the custody of the sheriff.    The latter has no power to arrest the party, or to detain him except according to the exigency of the writ ; and he has discharged himself of his whole duty, when he has produced the body in court.    His precept, in its terms, authorizes no detainer beyond the return day.    Upon what ground, then, can the court infer it ?

If resort be had to the practice, as certified to us by the clerks of the Maryland courts, it is in perfect coincidence with the natural construction of the terms of the act.    They assert the uniform practice upon writs of capias ad satisfaciendum in criminal cases to be, to bring the party into court, and then to award a committitur.    No instance is shewn in which a party has ever been held in custody after the return term, upon such a capias ad satisfaciendum, without a committitur.    Such a uniform course of practice, is of itself very cogent evidence of the law.    The practice in this district is not shown to be different. If it has not invariably conformed to that of Maryland, it seems to have conformed to it in almost all cases.    The only two cases produced to the contrary, are where the return was " cepi in jail ;" and the circumstances of these particular cases

(*a*) See also Evans's Harris's Entr. vol. 2d, p. 313, No. 40 ; Fulton v. Wood, 3 Harr. and M'H. Rep. 99 ; Dyer v. Beatty, 3 Harr. and M'H. Rep. 219

are unknown. The parties may have been already in jail on execution, or under other sentences.

And independent of the plain import of the writ of capias ad satisfaciendum, there may be sound reasons for requiring the body to be produced in court. The capias ad satisfaciendum may have issued irregularly; the party may have paid the fine; he may have received a pardon subsequently to its award; or he may have other matters to urge against a commitment. The remark of the court in Turner v. Walker, 3 Gill. and Johns. Rep. 377, 385, upon an analogous writ, is very applicable here. " It is proper and necessary," say the court, " to the security of the defendant, that it should be returned in term time, in order that he may have a day in court to protect his rights." Indeed, as the statute and the precept of the process both require this course, it is incumbent upon those who contend that it may be dispensed with, or is unnecessary, to show some ground of authority or principle upon which the argument can be maintained. We have not been able to find any.

It has been said, that where the party convicted is already in custody when the sentence is passed, the party is to be deemed in custody until the fine is paid, without any award of a commitment in the sentence, or the issuing of any capias ad satisfaciendum. We know of no authority justifying this position, either at the common law or under the laws of Maryland. On the contrary, the act of Maryland of 1777, ch. 13, plainly allows a discretion in the court to commit or not to commit, for the fine. The omission to award a commitment, as a part of the sentence, is manifestly an exercise of such a discretion. Unless a committitur be awarded, which can only be when the party is in court(a), there must, as has been seen, be a capias pro fine by the common law, and by the laws of Maryland a capias ad satisfaciendum, to justify his arrest and detention.

The capias ad satisfaciendum then, in this case, was properly awarded. It was a necessary process to recover the fine. The difficulty is, that no return was ever made to the court at the return day by the marshal, nor indeed until long after the

(a) See 1 Chitty's Criminal Law, 695, 696.

[Ex parte Watkins.]

marshal's office had expired. Watkins was never brought into court, nor committed by the order of the court. He is now held in jail, and has, ever since the return term, been held in jail solely upon the capias ad satisfaciendum, which became functus officio after the return day. He might have been arrested and detained in jail, if he had not been previously in custody, until the return day; but his detention afterwards, was not, in our judgment, justified by the process. In every view which we have been enabled to take of the case, we cannot find any principle or authority to justify his detention. Doubtless the detention has been in entire good faith, under a mistake of the law. But this cannot vary the results.

We are accordingly of opinion that the writ of habeas corpus ought to issue, as prayed for.

Mr Justice Johnson dissenting.

This case presents two questions, one of jurisdiction; and the other on the right to relief, if we assume jurisdiction.

My opinion on the first has been so strong in the negative, that I have taken little pains to investigate the second; but I will give a brief exposition of my views on both.

On the first I have thought that it need but be stated to be decided.

The prisoner is in custody of a capias ad satisfaciendum issuing out of the circuit court of this district. He has been convicted of a crime, a fine has been inflicted, and this writ has been issued to recover it, as he was not required by the sentence to remain in custody until the fine was paid. It is not questioned that the process was legally issued conformably to the laws of Maryland, or contended that any ground whatever exists for discharging the prisoner; except first, the excessive character of the fine, which ground this court has now decided against; and secondly, that upon which he is now to be discharged, to wit, that he was not on the return day of the writ brought into court, and there formally recommitted to the marshal, to be detained until the fine was paid.

Now it does appear to me that it is impossible to avoid being trussed on one horn or the other of the dilemma, with which the case was met by the attorney-general. Is this court called upon to relieve the prisoner against an act of the court, or an act of

the officers of the court?   If of the court, then what act has the court done, or omitted to do, to the prejudice of the defendant? The cause of complaint is, that it has not committed him to the custody of the marshal; but the custody of the marshal is the very injury that we are now called upon to redress.   Is the omission to do that which, by the terms of this application it is acknowledged, would have legally and effectually deprived him of his liberty, a matter for him to complain of? or for us to relieve him from?   But suppose it is a cause of complaint that the court has erred in not doing an act which it was never called upon to do; then have they not erred in a criminal cause?   And is it not therefore acknowledged to be beyond the limits of our appellate jurisdiction?

But the truth is, and it is impossible to controvert it, that the complaint is, and the relief sought is, against the marshal for a detention without authority. The court committed no error in issuing the process, under which the arrest was made; and if, as is now established, the process has lost its efficiency, and is no longer a justification for detaining the prisoner; it is not *under* the process of the court that he is detained, but *without it*, and therefore false imprisonment in the officer.   Why did not the prisoner present this motion to the court that issued the process? to the court whose officer the marshal is, quoad hoc?   The reason is obvious; had the court refused to discharge him, and this application then been made here, the appeal would have been too palpably in a case of criminal jurisdiction.   And yet, in that event only, would he have found a pretext for claiming of *this court* redress against an act of *that court*.   At present there is no act of that court for this court to revise; for if not giving the order for commitment could be tortured into such an act, then the answer is, there never was a motion made to grant such an order: and if holding him in custody under process, or pretext of process, issuing out of that court, can be considered as a subject of revision here; then is the court unaffected by the error, since, in terms, the motion here admits their process to have long since expired in the marshal's hands: and surely the court is not responsible for any thing done under colour of its process, but for which the process gives no authority.

The truth is, that this is a direct interference by means of

the writ now moved for, between a court of the United States, and the executive officer of that court : and upon the principles of this decision, I see no reason why we may not next be called upon to issue the same writ to our Ultima Thule, the mouth of the Oregon, to bring up a prisoner under a capias ad satisfaciendum, in order to examine whether he has paid the debt or not.   Is this appellate jurisdiction ; or is it the proper employment of this tribunal?

This all grows out of the case of Hamilton; a case on which the question was not decided, and a case which, if any one will examine the report of it, he will pronounce of very little authority.   Then followed the case of Bollman v. Swartwout, professing obedience to that of Hamilton ; but a case which occurred in the midst of great public excitement.   Next came those of Burford and Kearney, et similes multi ; and finally this, which is a distinct augury in my humble opinion of the conclusions to which we are finally to be led by precedent.   I have always opposed the progress of this exercise of jurisdiction, and will oppose it as long as a hope remains to arrest it.

On the second point, I will make but a few remarks.

I have never doubted that under the writ of capias ad satisfaciendum, by the common law, the sheriff may not only take, but detain the defendant until he was legally discharged ; or that for the purpose of authorizing a detention in his own custody, a commitment to the sheriff was unheard of.   On the page of the book quoted by defendant's counsel to maintain the contrary doctrine, which precedes the page quoted, will be found, an entry, that explains in what cases the committitur is resorted to in England.   It is true that this writ has its return day; and that it, in terms, requires the production of the defendant's body on that day: but practically, this exigency of the writ has received this construction; " that he have him ready to produce on that day, if so required by the plaintiff." Blackstone says, vol. 3, p. 415, " if he does not on that day make satisfaction, he must remain in custody until he does." And in the case of Hopkins v. Plomer, 2 Black. 1048, the court gives in express terms, that version to the writ.   " It is the sheriff's duty, say the court, to obey the writ, and the writ commands him to take the defendant, and him safely keep, so that he may have him *ready to satisfy the plaintiff*.   What figure

[Ex parte Watkins.]

would a sheriff make in England, if to an action for escape, he were to plead that he took the defendant and brought him into court on the day, &c., in the literal language of the exigency of the writ? No one would dream of justifying his not detaining the prisoner, for want of a committitur. But it is insisted that the common law has undergone a change under the laws and practice of Maryland.

I have seen no statute of Maryland which, either in terms or by inference, makes a committitur to himself necessary to justify a sheriff in detaining his prisoner under a capias ad satisfaciendum. It is true that, by a very humane and judicious provision, the laws of Maryland have permitted the plaintiff to indulge the defendant in execution without losing his debt; and from this the practice might naturally grow up to bring the defendant into court to await the will of the plaintiff: and the court have very properly decided, omitting the motion to remand him, did not deprive the plaintiff of his second execution : but I look in vain for any decision going to establish that the sheriff would have been liable for false imprisonment, had he taken the prisoner back to jail without a commitment.

This has been sought to be supplied by a reference to the clerks of the Maryland courts to establish a practice to that effect; but I protest against such means of getting at the law of a case, especially as to a practice of which those clerks are called to testify subsequent in date to the separation from Maryland. But I have looked into the evidence thus procured, and, even if legal, I look in vain for any evidence to support the doctrine; most of them speak doubtingly, or decline speaking at all, and the sum and substance of the certificates of the whole amount to no more than this, that if the sheriff brings the body into court, the court will, on motion, order a commitment. But this is not the point we are called upon to decide : we are called upon to decide that, without such commitment, it would be false imprisonment in the sheriff to resume the custody of the defendant. In this district, I think there has been positive evidence furnished by the defendant himself of the exercise of a discretion in the marshal, whether to bring the person of the prisoner into court or not ; and therein perhaps to consult the feelings of the individual. I allude to those two instances in which the return was "cepi and defend-

ant in jail." We may imagine some possible ground for lessening the pressure of these two instances; but certainly the case, as exhibited to us, furnishes no such ground.

I am opposed to the order now made.

Mr Justice M'LEAN dissented, on the ground that where a defendant had been committed by the marshal on a capias ad satisfaciendum, before the return day of the writ, it is not the practice either in this district or in the state of Maryland, as he understood it, to bring up the defendant, that he may be prayed in commitment: but that it is the practice, under the construction of the Maryland law, where a defendant has been arrested on a capias ad satisfaciendum, and permitted to go at large until the return day of the writ, to bring his body into court on such day, that it may be prayed in commitment.

On consideration of the petition filed in this case in behalf of the petitioner, and of the arguments of counsel as well for the United States as for the petitioner thereupon had, it is the opinion of this court that the writ of habeas corpus ought to issue as prayed for. Whereupon, it is considered, ordered and adjudged by this court, that a writ of habeas corpus be forthwith issued, directed to the marshal of the United States for the district of Columbia, commanding him to have the body of the said Tobias, with the day and cause of his caption and detention, immediately after the receipt of the writ, to do, receive and submit to all and singular those things which the court shall consider concerning him in this behalf, and to have then and there the said writ with his doings thereon.

To the writ of habeas corpus the marshal of the district of Columbia made the following return:

Henry Ashton, Esq. marshal of the United States for the district of Columbia, having read in open court and filed the following writ, together with his return thereon, viz. "United States of America, ss. The president of the United States, to the marshal of the United States for the district of Columbia, greeting: You are hereby commanded that you have the body of Tobias Watkins, detained under your custody, as it is

said, under a safe and secure conduct, together with the day and cause of his caption and detention, by whatsoever name he shall be called in the same, before the supreme court of the United States, now sitting in the capitol of the United States in the city of Washington, being the present seat of the national government, immediately after the receipt of this writ, to do, receive and submit to all and singular those things which the said supreme court shall then and there consider concerning him in this behalf, and have then and there this writ with your doings thereon. Witness, &c.

Return of the marshal. " To the honourable the judges of the supreme court of the United States. The marshal of the district of Columbia, in obedience to the writ of habeas corpus issued by the authority of your honours, now produces into your honourable court the body of Tobias Watkins, who has been in his custody ever since he came into office, delivered over to him by his predecessor, Tench Ringgold, in jail; he stating that he had been held in his custody by virtue of three writs of capias ad satisfaciendum at the suit of the United States, and by virtue of a writ of capias ad respondendum, at the suit of one William Cox, upon which said last mentioned writ he the said Watkins had been prayed into commitment by the said Cox, and had been ordered into commitment by the honourable judges of the circuit court of the United States for the district of Columbia, sitting for Washington county, by whose authority all the said writs had been issued. That being satisfied of the correctness of the representations of his said predecessor, he continued to detain the said Watkins in custody without any complaint or allegation of any illegality or wrong in the said confinement until the rule was moved for in your honourable court, at its present term, at the instance of said Watkins, for cause to be shown by the attorney-general of the United States why a writ of habeas corpus should not be granted to bring the said Watkins before your honours, together with the cause of his detention. He further shows to your honours, that since the said rule was moved for, the writ of Cox, as aforesaid, has been dismissed; and from that time to the time of his receiving the said writ of habeas corpus, he held him in custody by virtue only of the three writs of capias ad satisfaciendum at the suit of the United States. considering it improper to discharge him

[Ex parte Watkins.]

pending the deliberations of your honours upon the legality or illegality of his detention under and by virtue of those writs last mentioned."

On consideration whereof, and after due deliberation thereupon had, it is now here considered, ordered and adjudged by this court, in this behalf, that the said prisoner, Tobias Watkins, be, and he is hereby discharged from confinement under the said several three writs of capias ad satisfaciendum at the suit of the United States. in the said return of the marshal mentioned.

After the discharge of Mr Watkins, by this order of the court, on the 19th day of February 1833, he was, on the same day, arrested and confined by the marshal of the district of Columbia, under three several writs of capias ad satisfaciendum issued on the same judgments, under which he had been previously detained in prison. These writs were dated on the 19th of February 1833, and were issued by order of the district attorney of the United States for the district of Columbia; and were returnable at the next term of the circuit court of the district.

A petition for a writ of habeas corpus, setting forth this arrest and his imprisonment under it, was presented by Mr Watkins; and a rule on the attorney-general was, on motion, granted, to show cause why the same should not issue.

After argument of this rule, by Mr Coxe and Mr Brent, for the relator; and by Mr Taney, the attorney-general of the United States, and Mr Key, the attorney of the United States for the district of Columbia; the rule was discharged: "the court being equally divided in opinion as to the question whether this court ought to award a writ of habeas corpus, as prayed in the case by the petitioner"(a).

(a) At the March term 1833 of the circuit court of the United States for the county of Washington in the district of Columbia, Mr Watkins was brought up on a writ of habeas corpus awarded by that court, and was discharged. The very learned opinion of the court, delivered by the chief justice of the circuit court, will be found in the appendix to this volume.