O’SCANNLAIN, Circuit Judge,
dissenting:
Today, the majority divines, under the rubric of substantive due process, that Arizona’s categorical denial of bail is “excessive” notwithstanding the State’s interest in mitigating flight risk. Remarkably, the majority scarcely mentions the Constitution’s command that “[ejxcessive bail shall not be required.” U.S. Const, amend. VIII.
*805 I respectfully dissent from our expansion of substantive due process and neglect of express constitutional text.[1]
I
A
“[Rjeluctant to expand the concept of substantive due process,” Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the Supreme Court held in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), that “[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.” Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (alteration in original) (quoting Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion of Rehnquist, C.J.)). “Graham ... requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.” United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (emphasis added) (citing Graham, 490 U.S. at 394, 109 S.Ct. 1865).
The majority flouts this requirement. It “first” analyzes the Proposition 100 laws under “general substantive due process principles,” Maj. Op. at 780, 780-90, then considers whether the Proposition 100 laws violate the specific due process prohibition on imposing punishment before trial, id. at 780, 789-91. My colleagues in the majority decline to consider — ever— whether the Proposition 100 laws violate the Eighth Amendment. Id. at 791-92 & n. 16.
One would hardly know, after reading the majority’s forty-three page opinion— analyzing whether Arizona’s denial of bail was excessive in light of the flight risk posed by illegal immigrants — that, under the Eighth Amendment of the Constitution itself, “[ejxcessive bail shall not be required.”[2] Indeed, one might think that “[t]he Court has prohibited excessive bail.” Maj. Op. at 777 (emphasis added).
B
To be sure, specific constitutional provisions do not preclude recognition of substantive due process rights that touch on related subjects. Lewis, 523 U.S. at 843, 118 S.Ct. 1708 (“Substantive due process analysis is therefore inappropriate in this case only if respondents’ claim is ‘covered by5 the Fourth Amendment.”); see, e.g., Lanier, 520 U.S. at 272 n. 7, 117 S.Ct. 1219 (Graham did “not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments.”). Not every conceivable constitutional dispute regarding bail is resolved by the Eighth Amendment. But the question whether denying bail to illegal immigrants based on flight risk is unconstitutionally excessive is posed, precisely, by the Exces *806 sive Bail Clause. See Stack, 342 U.S. at 4-5, 72 S.Ct. 1.
The majority relies primarily on United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), to justify its substantive due process inquiry, but I suggest that it has not read that case carefully enough. Salerno does not excuse the majority’s disregard of the Eighth Amendment, because this case, unlike Salerno, concerns detention based on flight risk.
Two substantive due process arguments against the Bail Reform Act of 1984 were rejected in Salerno: The Court analyzed whether “the Due Process Clause prohibits pretrial detention on the ground of danger to the community.” Id. at 748, 107 S.Ct. 2095. And the Court considered whether it was unconstitutional “because the pretrial detention it authorizes constitutes impermissible punishment before trial.” Id. at 746, 107 S.Ct. 2095. Both claims were grounded in the Court’s substantive due process precedents; they required the Court to decide whether the Bail Reform Act violated already established due process rights. See id. at 749-51, 107 S.Ct. 2095 (detention based on dangerousness) (citing, inter alia, Schall, 467 U.S. 253, 104 S.Ct. 2403, Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), and Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952)); id. at 746-47, 107 S.Ct. 2095 (punishment before trial) (citing Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) and Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)). Neither claim implicated the Eighth Amendment inquiry proper to this case-whether the Proposition 100 bail laws are constitutionally “excessive” based on flight risk.
1
As to its “general substantive due process principles,” the majority misreads Salerno by conflating detention based on dangerousness, which the Court considered, with detention based on flight risk, which the Court did not. In Salerno, the Court rejected the “categorical imperative” — advanced by the Second Circuit— that the Due Process Clause “prohibits pretrial detention on the ground of danger to the community.” Id. at 748, 107 S.Ct. 2095 (emphasis added). Because due process does not “erect[] an impenetrable ‘wall’ ” to such detention, the Court reasoned “that the present statute providing for pretrial detention on the basis of dangerousness must be evaluated in precisely the same manner” — applying means-end scrutiny — “that we evaluated the laws in the cases discussed above.” Id. at 748^19, 107 S.Ct. 2095 (emphasis added).
Nothing in Salerno suggests that detention based on flight risk should be evaluated in the same manner. See id. at 749,107 S.Ct. 2095 (Detainees “concede and the Court of Appeals noted that an arrestee may be incarcerated until trial if he presents a risk of flight.”).[3] Indeed, the Eighth Amendment secures the specific right not to be required to post excessive bail in light of flight risk. See Stack, 342 U.S. at 4-5, 72 S.Ct. 1. The majority’s substantive due process inquiry is thus inappropriate under Graham. See, e.g., John Corp. v. City of Houston, 214 F.3d 573, 582 (5th Cir.2000) (“The purpose of Graham is to avoid expanding the concept of substantive due process where another constitutional provision protects individuals against the challenged governmental action.”).
*807 2
The Court’s substantive due process jurisprudence indeed secures the specific right to be free from punishment before trial. E.g., Schall, 467 U.S. at 269, 104 S.Ct. 2403. But the majority misapplies that jurisprudence, asking under substantive due process questions properly considered under the Eighth Amendment and thereby displacing specific constitutional text.
Our role is to question whether a particular “disability is imposed for the purpose of punishment.” Bell v. Wolfish, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). To decide whether the legislative purpose was punitive, in the absence of an “express intent to punish,” we must discern whether pretrial detention is “excessive in relation to the alternative purpose assigned [to it].” Id. Answering that question, Salerno considered the “incidents of pretrial detention” under the Bail Reform Act — such as prompt detention hearings and whether pretrial detainees were housed separately from postconviction detainees — and concluded that they did not reveal an improper punitive purpose. 481 U.S. at 747, 107 S.Ct. 2095 (emphasis added). By contrast, the majority here considers the substance of Proposition 100— categorical denial of bail — and decides it is excessive notwithstanding the heightened risk of flight, the very question properly considered under the Eighth Amendment.[4]
c
The Supreme Court tells us not to rely on generalized substantive due process “because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.” Collins, 503 U.S. at 125, 112 S.Ct. 1061. The majority’s incautious expansion of substantive due process confirms the wisdom of such advice. Grounded in neither text nor history, the majority’s due process inquiry simply replaces legislative and popular judgment with its own, at least until Arizona provides sufficiently robust statistical analysis to suit.
If we must remove “a difficult question of public policy ... from the reach of the voters” of Arizona, Schuette v. Coal, to Defend Affirmative Action, — U.S.-, 134 S.Ct. 1623, 1637, 188 L.Ed.2d 613 (2014), we should pay them the respect of grounding our decision in the textual guarantees of the Constitution, not the nebulous haze of substantive due process.
II
The question we ought to have considered is whether the Eighth Amendment contains any substantive restrictions on Arizona’s authority to declare certain classes of crimes or criminals nonbailable, and, if so, whether Proposition 100 violates such restrictions.[5] Without thorough briefing on such questions from the par *808 ties, but guided by sparse discussion in Supreme Court precedent, I offer a tentative answer.
In Carlson, the Supreme Court rejected the proposition that the Eighth Amendment required certain detainees to be admitted to bail:
The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country.
342 U.S. 524, 545-46, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (emphasis added) (footnotes omitted). In Salerno, the Court reserved the question “whether the Excessive Bail Clause speaks at all to Congress’ power tó define the classes of criminal arrestees who shall be admitted to bail.” 481 U.S. at 754,107 S.Ct. 2095.[6] '
As noted in Carlson, the Eighth Amendment echoes the English Bill of Rights of 1689. Compare U.S. Const, amend. VIII (“Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.”), with English Bill of Rights 1689 (declaring that “excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted”). But “bail was not an absolute right in England.” William F. Duker, The Right to Bail: A Historical Inquiry, 42 Albany L.Rev. 33, 77 (1977). The English Bill of Rights did not restrain Parliament from declaring which classes of crimes were bailable. See Hermine Herta Meyer, Constitutionality of Pretrial Detention, 60 Geo. L.J. 1139, 1155-58 (1972); see also Duker, supra, at 81. Of course, “that Parliament classified certain offenses as nonbailable is not an absolute indication that Congress was to enjoy the same power” under the Eighth Amendment, “to define bailable and non-bailable offenses.” Hunt v. Roth, 648 F.2d 1148, 1159 (8th Cir.1981), vacated sub nom. Murphy v. Hunt, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).
Early American constitutions suggest, nonetheless, that their prohibitions of “excessive bail” limited the judiciary, not the legislature. E.g., Md. Const, of 1776, § 22 (“That excessive bail ought not to be required ... by the courts of law.”); N.H. Const, of 1784, art. I, § 33 (“No magistrate or court of law shall demand excessive bail or sureties.... ”); see generally, Duker, supra, at 79-83. “[B]y the time of the formulation of the Bill of Rights by the first Congress of the United States, the experience in America had been to grant bail in cases which were bailable, as determined by the legislature.” Id. at 83 (emphasis added). Legislatures were free to declare horse stealing, for example, bailable or not. Compare Caleb Foote, The Coming Constitutional Crisis: Part I, 113 U. Pa. L.Rev. 959, 976-77 (1965) (describing the failure by one vote of Jefferson’s bill to render horse theft bailable), with Duker, supra, at 82 & n. 293 (noting that Georgia’s legislature denied bail for horse stealing despite constitutional guarantee *809 that “excessive bail” shall not be “demanded”).
The First Congress’s debates over the Bill of Rights contain no hint that the originally understood meaning of the Eighth Amendment’s Excessive Bail Clause was any different from the right guaranteed by the same words in the English Bill of Rights or the State constitutions. Carlson, 342 U.S. at 545 & n. 44, 72 S.Ct. 525; see also Duker, supra, at 85-86.
I tentatively conclude, therefore, based on the text of the Constitution and the history of the right to bail, that the Eighth Amendment secures a right to reasonable bail where a court has discretion to grant bail. Cfi Ex parte Watkins, 32 U.S. (7 Pet.) 568, 573-74, 8 L.Ed. 786 (1833) (Story, J.) (“The [E]ighth [AJmendment is addressed to courts of the United States exercising criminal jurisdiction, and is doubtless mandatory to them and a limitation upon their discretion.”). It does not, however, restrict legislative discretion to declare certain crimes nonbailable. See Duker, supra, at 86-87 (“Although the amendment limits the discretion of the courts in setting bail, Congress is free to determine the cases for which bail shall be allowed, or whether it shall be allowed at all.”); Meyer, supra, at 1194 (The Constitution “reserved for Congress the right to make legislative changes [to bail] whenever' required by changed circumstances.”). I have found no evidence to suggest that the Excessive Bail Clause, as originally understood, limited legislative discretion.[7]
III
During Congress’s debates on the Bill of Rights, the only comment on the Excessive Bail Clause was by Samuel Livermore, Representative for New Hampshire, “who remarked: ‘The clause seems to have no meaning to it, I do not think it necessary. What is meant by the terms excessive bail? Who are the judges ...?’”[8] Ignoring the first question, regrettably, the majority firmly answers the second: “We are.”
On the majority’s chosen ground, Judge Tallman has the better of the argument, so I happily join his dissent. But I regret the majority’s impulse to clash in the terra incognitia of substantive due process. Guided by text and history, we might have found surer footing by applying the Excessive Bail Clause.
I respectfully dissent.

. Because I believe that the majority's substantive due process analysis is wrong as well as unnecessary, I also join Judge Tallman’s dissent.

. A sharp-eyed reader might spot the majority’s brief gestures toward the Eighth Amendment's prohibition in its discussion of Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Maj. Op. at 777-78.

. Thus, the distinction between denial of bail for dangerousness and denial of bail based on flight risk is "recognized” in Salerno itself, contra Maj. Op. at 792 n. 16, the majority's misinterpreted dicta notwithstanding, cf. Tallman Dissent at 800 n. 3.

. The majority’s confusion is also evident in what meaning it affords a finding of '‘excessiveness.” In Schall, 467 U.S. at 269, 104 S.Ct. 2403, and in Salerno, 481 U.S. at 747, 107 S.Ct. 2095, excessiveness may indicate an improper punitive purpose. In the majority’s view, however, "excessiveness” is an independent constitutional violation under substantive due process. See Maj. Op. at 790-91. Here, the majority assumes "that Proposition 100 was adopted for the permissible regulatory purpose of managing flight risk.” Id. at 790. Under substantive due process, that should have been the end of the inquiry.

. For the purposes of this dissent, I assume the Excessive Bail Clause has been incorporated against the States. See McDonald v. City of Chicago, 561 U.S. 742, 130 S.Ct. 3020, 3034 & n. 12, 177 L.Ed.2d 894 (2010) (citing Schilb v. Kuebel, 404 U.S. 357, 365, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971) (noting that the Excessive Bail Clause "has been assumed to have application to the States”)).

. Lopez and Castro rely, as did the detainees in Salerno, on Stack’s dictum that "[bjail set at a figure higher than an amount reasonably calculated to [to assure the presence of the accused] is ‘excessive’ under the Eighth Amendment.” 342 U.S. at 5, 72 S.Ct. 1. But that standard addresses how the Eighth Amendment constrains courts. It does not answer how, if at all, the Amendment constrains legislatures.

. Even Professor Foote, foremost proponent of the view that the Eighth Amendment was "meant to provide a constitutional right to bail,” conceded that "the underlying right to the remedy of bail itself ... was omitted” from the Constitution, albeit through "inadvertence.” Foote, supra, at 968, 987. I agree with the perceptive law student who dismissed Foote’s argument as supported by "little more than speculation about the workings of the minds of George Mason and the Framers,” and "flawed” speculation at that. Donald B. Verrilli, Jr., Note, The Eightji Amendment and the Right to Bail: Historical Perspectives, 82 Colum. L.Rev. 328, 340 (1982).

. Duker, supra, at 86 (quoting 1 Cong. Deb. 754 (Gales & Seaton eds. 1834)).