The PEOPLE of the State of Colorado, Petitioner,

v.

Chris CISNEROS, Respondent.

The PEOPLE of the State of Colorado, Petitioner,

v.

Willie Louis ATES, Respondent.

Nos. 91SC467, 92SC71.

Supreme Court of Colorado, En Banc.

July 6, 1993.

Rehearings Denied July 26 and Aug. 30, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Clement P. Engle, Asst. Atty. Gen., Appellate Section, Denver, for the People.

Cherner and Blackman, Barbara S. Blackman, Denver, for Chris Cisneros.

Karen Chilton Beverly, Duncanville, TX, for Willie Louis Ates.

Justice VOLLACK delivered the Opinion of the Court.

The People of the State of Colorado (the People) petition from the decision of the court of appeals in *People v. Cisneros*, 824

P.2d 16 (Colo.App.1991), wherein the court of appeals affirmed respondent Chris Cisneros' convictions of second-degree burglary[1] and theft,[2] and his adjudication as a habitual criminal on the basis of four prior felony convictions, but remanded the case to the trial court to conduct an extended proportionality review of his sentence to life imprisonment with eligibility for parole after forty years.[3] The court of appeals held that an extended proportionality review was required in light of Cisneros' age[4] because, "for all practical purposes, [Cisneros] is ineligible for parole." *Cisneros*, 824 P.2d at 19.

The People also petition from the court of appeals decision in *People v. Ates*, No. 89CA1593 (Colo.App. Apr. 4, 1991) (not selected for publication), wherein the court of appeals affirmed Willie Louis Ates' conviction of possession of a controlled substance (cocaine),[5] and his adjudication as a habitual criminal on the basis of three prior felony convictions, but vacated Ates' sentence to life imprisonment,[6] and remanded the case to conduct an extended proportionality review of the sentence. As in *Cisneros*, the court of appeals in *Ates* reasoned that Ates is essentially ineligible for parole by virtue of his age.[7]

We granted the People's petitions for certiorari review of the court of appeals' conclusions in *Cisneros* and *Ates*, and consolidated the cases for our review. We first determine that an abbreviated form of proportionality review is appropriate in both *Cisneros* and *Ates*, and, after conducting such a review in each case, we reverse the judgments of the court of appeals in both *Cisneros* and *Ates*.

## I.

### A.

#### Cisneros

On April 2, 1987, a tenant returning home discovered that his apartment door was ajar and that an intruder was inside. The intruder struck the tenant several times and then escaped from the apartment building. The manager of the apartment building observed the intruder drive away in a red Toyota pickup truck. The tenant found that his dresser drawers had been ransacked, and that jewelry which he had inherited from his father, a $7,800 watch, and $1,200 in cash were missing. The tenant reported the incident to Denver police officials, and the apartment manager provided the police with the license number of the pickup truck and a description of the intruder. The police determined that Chris Cisneros owned the red pickup truck, and both the tenant and the apartment building manager positively identified Cisneros as the intruder. Cisneros was arrested the following day.

The People subsequently filed a complaint and information charging Cisneros with the offenses of second-degree burglary and theft. The People later amended the complaint and information to charge Cisneros as a habitual criminal.[8] The additional seven convictions charged included:

1. § 18–4–203(2)(a), 8B C.R.S. (1986).

2. § 18–4–401(1)(a), (2)(c), 8B C.R.S. (1986).

3. Cisneros was sentenced to life imprisonment pursuant to Colorado's habitual criminal statute, § 16–13–101, 8A C.R.S. (1986), and is eligible for parole after forty years under § 17–22.5–104(2)(c), 8A C.R.S. (1986).

4. Cisneros was fifty-nine years old at the time of sentencing.

5. § 12–22–310, 5A C.R.S. (1986); § 18–18–105, 8B C.R.S. (1986).

6. *See* § 16–13–101(2), 8A C.R.S. (1986).

7. Ates was forty years old at the time of sentencing.

8. The relevant portion of the habitual criminal statute provides as follows:

> **16–13–101. Punishment for habitual criminals....**
>
> (2) Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct episodes, either in this state or elsewhere, of a felony ... shall be adjudged an habitual criminal and shall be punished by imprisonment in a correctional facility for the term of his or her natural life.
>
> § 16–13–101(2), 8A C.R.S. (1986).

(1) Count 3: attempted second-degree burglary[9] (1986) (sentenced pursuant to guilty plea);

(2) Count 4: second-degree burglary[10] (1982) (sentenced pursuant to guilty plea);

(3) Count 5: attempted second-degree burglary[11] (1979) (sentenced pursuant to guilty plea);

(4) Count 6: attempted possession of narcotic drug[12] (1976) (sentenced pursuant to guilty plea);

(5) Count 7: possession of burglary tools[13] (1971) (sentenced pursuant to guilty plea);

(6) Count 8: second-degree burglary[14] (1967) (sentenced pursuant to guilty plea);

(7) Count 9: receiving stolen property[15] (1960) (sentenced pursuant to plea of nolo contendere).

Cisneros collaterally attacked the prior convictions at a pretrial hearing, and the court suppressed the convictions alleged in count 7 and count 8, because Cisneros made an unrebutted *prima facie* showing of their invalidity. The court also granted a judgment of acquittal as to count 6 due to a technical failure of proof.

On June 22, 1989, a jury found Cisneros guilty of both of the substantive charges, and Cisneros was convicted of second degree burglary, a class 3 felony, and theft, a class 4 felony. Cisneros subsequently waived his right to a jury trial on the habitual criminal charges, and was adjudicated as a habitual criminal on the basis of four of the nine charged prior felony convictions. The four prior convictions underlying the habitual criminal adjudication in-

cluded: (1) attempted second-degree burglary (1986); (2) second-degree burglary (1982); (3) attempted second-degree burglary (1979); and (4) receiving stolen property (1960). According to the pre-sentence report, Cisneros was on parole at the time that he committed the present offenses.

Prior to sentencing, Cisneros filed a motion with the trial court requesting a proportionality review[16] of the mandatory life sentence which the trial court was required to impose pursuant to the habitual criminal statute. Cisneros argued that, in light of his age, he was effectively precluded from parole consideration. Cisneros also contended that a comparison of his offense to others similarly situated would establish that imposition of the mandatory sentence required under the habitual criminal statute would constitute cruel and unusual punishment.[17]

The trial court denied Cisneros' motion for proportionality review. The trial court declined to conduct a proportionality review because an individual sentenced pursuant to the habitual criminal statute is eligible for parole, and because either the court of appeals or this court could conduct a proportionality review on appeal. In accordance with section 16–13–101(2), 8A C.R.S. (1986), of the habitual criminal statute, the trial court sentenced Cisneros to life imprisonment with eligibility for parole after forty years.[18]

On appeal, Cisneros argued that the trial court erred in denying his motion to conduct a proportionality review of his sentence. The court of appeals found that, because Cisneros was fifty-nine years old, the forty-year sentence was the equivalent

---

9. §§ 18–2–101(1), 18–4–203(2), 8B C.R.S. (1986).

10. § 18–4–203(2), 8 C.R.S. (1978 & 1981 Supp.).

11. §§ 18–2–101(1), 18–4–203(2), 8 C.R.S. (1978).

12. § 18–2–101(1), 8 C.R.S. (1973); § 12–22–302, 5 C.R.S. (1973).

13. § 40–3–7, 3 C.R.S. (1963).

14. § 40–3–5, 3 C.R.S. (1963).

15. § 40–5–12, 3 C.R.S. (1953).

16. Cisneros did not specify in his motion whether he was seeking an extended or an abbreviated form of proportionality review.

17. Although Cisneros did not specify at trial whether he was relying upon the Eighth Amendment of the United States Constitution or article II, section 20, of the Colorado Constitution, his brief before the court of appeals asserted a violation only of the Eighth Amendment. We therefore deem his challenge here to be based solely upon the Eighth Amendment.

18. *See* § 17–22.5–104(2)(c), 8A C.R.S. (1986).

of a life sentence without the possibility of parole, and that Cisneros was therefore entitled to an extended proportionality review. *People v. Cisneros,* 824 P.2d 16, 18–19 (Colo.App.1991). The court of appeals reasoned as follows:

> Under the *Solem[ v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ] ruling, an extended proportionality review is mandated by the Eighth Amendment protection against cruel and unusual punishment if the defendant is faced with a life sentence without the possibility of parole.... In our view, ... the fact that defendant's life will likely end before he is eligible for parole makes this situation comparable to that in *Solem v. Helm,* and, therefore, an extended proportionality review is required.

*Id.* at 18–19. The court of appeals concluded that the record on appeal did not permit it to conduct an extended proportionality review; accordingly, the court of appeals remanded the case to the trial court with directions to conduct such a review.

The People filed a cross-petition for writ of certiorari, asserting that the court of appeals erred in holding that Cisneros was entitled to an extended proportionality review even though he was eligible for parole in forty calendar years.[19]

### B.

#### Ates

On April 23, 1988, Colorado Springs Police officials entered an alleged crack house, pursuant to a warrant, and discovered the respondent, Willie Louis Ates, alone in one of the bedrooms. The police searched both Ates and the room, and found cocaine, a scale with cocaine residue, and paraphernalia associated with the manufacture, distribution, and consumption of crack cocaine.

The police arrested Ates and subsequently charged him with the offenses of possession of a controlled substance (cocaine),[20] and possession of a controlled substance (cocaine) with intent to distribute, dispense, or sell.[21] The People later amended the complaint and information to charge Ates as a habitual criminal based upon three prior felony convictions. The first conviction, for the sale of narcotic drugs (cocaine, two counts),[22] occurred in 1981. The second conviction, for felony menacing with a knife,[23] occurred in 1986; and the third conviction, for violation of bail bonds conditions,[24] occurred in 1987.

Prior to trial, Ates moved to dismiss the habitual criminal charges and the trial court denied this motion. The trial court reasoned as follows:

> I think that the supporting criminal charges here of sale of narcotics, menacing—Even, in my opinion, bail jumping or violation bail bond conditions is not the—certainly not the most heinous crime in the world but does carry a penalty potentially of up to eight years in prison. So society has deemed it not an unsubstantial offense. I wouldn't think that they were so minor in their nature as to constitute cruel and unusual punishment at this time.

The jury found Ates guilty of count 1, the offense of possession of a controlled substance (cocaine), a class 3 felony.[25] In bifurcated proceedings under the habitual statute, the jury subsequently determined

---

19. Cisneros filed a petition for certiorari on the issue of "whether counts 3, 5, and 9 could not be used for habitual criminal purposes, as Mr. Cisneros' prima facie showing of unconstitutionality was unrebutted by the prosecution." We denied this petition.

20. § 12–22–310, 5A C.R.S. (1986); § 18–18–105, 8B C.R.S. (1986).

21. § 12–22–310; § 18–18–105.

22. §§ 12–22–302, –322(2)(b), 5 C.R.S. (1978 & 1980 Supp.).

23. § 18–3–206, 8B C.R.S. (1986).

24. § 18–8–212(1), 8B C.R.S. (1986).

25. The jury was unable to reach a verdict as to count 2, the charge of possession of a controlled substance with intent to distribute, dispense, or sell. The prosecution orally moved for a dismissal of count 2, and the district court granted this motion.

that Ates had been convicted of three prior felonies. Pursuant to section 16–13–101(2), the trial court sentenced Ates to life imprisonment without the possibility of parole for forty years.[26]

Ates appealed his convictions, arguing that his sentence constituted cruel and unusual punishment in view of the "minor" offenses underlying his conviction as a habitual criminal. He also argued that he was entitled to a proportionality review of his sentence.[27]

On appeal, the court of appeals affirmed Ates' convictions, but vacated his sentence and remanded the case to the trial court with directions to conduct an extended proportionality review. The court of appeals reasoned that

> [Ates] was 40 years old at the time of sentencing and will not be eligible for parole until he reaches age 80. *See* § 17–22.5–104(2)(c), C.R.S. (1986 Repl. Vol. 8A). Further, under the statutory mortality tables, one who has completed the age of 40 years has a life expectancy of 37.0 years. Section 13–25–103, C.R.S. (1987 Repl. Vol. 6A). Accordingly, for all practical purposes, [Ates] is, in effect, ineligible for parole. On that basis, we conclude that the defendant is entitled to an extended, rather than an abbreviated, proportionality review of his life sentence.

*People v. Ates*, No. 89CA1593, slip op. at 4 (Colo.App. Apr. 4, 1991).

### C.

We granted certiorari in *Cisneros* to determine "[w]hether the court of appeals erred in holding that the petitioner was entitled to an extended proportionality review, although petitioner was eligible for parole in forty calendar years." Similarly, we granted certiorari in *Ates* to decide "[w]hether an extended proportionality review of an habitual offender sentence is

required simply because the individual's life expectancy does not exceed his period of parole ineligibility."

Based upon previous decisions by this court and by the United States Supreme Court, we conclude that mitigating factors, such as the defendant's age, are irrelevant in determining whether a punishment is proportionate to the crime under the Eighth Amendment. *See Harmelin v. Michigan*, — U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *People v. Smith*, 848 P.2d 365 (Colo.1993); *People v. Gaskins*, 825 P.2d 30 (Colo.1992); *Alvarez v. People*, 797 P.2d 37 (Colo.1990); *People v. Drake*, 785 P.2d 1257 (Colo.1990); *People v. Hernandez*, 686 P.2d 1325 (Colo.1984). We further conclude that an abbreviated form of proportionality review is warranted, and that this court may conduct such a review in both *Cisneros* and *Ates*.

### II.

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In interpreting the cruel and unusual punishment clause of the Eighth Amendment, the United States Supreme Court held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem*, 463 U.S. at 290, 103 S.Ct. at 3009. *Solem* articulated a three-pronged proportionality analysis which provides as follows:

> When sentences are reviewed under the Eighth Amendment, courts should be guided by objective factors that our cases have recognized. First, we look to the gravity of the offense and the harshness of the penalty....

---

26. *See* § 17–22.5–104(2)(c), 8A C.R.S. (1986). Ates did not again request a proportionality review of his sentence, but he preserved the issue of the trial court's denial of his pretrial motion for such review in a post-trial motion.

27. Because the record on appeal does not contain a transcript of the sentencing hearing, we cannot ascertain whether Ates again requested the trial court, at sentencing, to consider the constitutionality of the life sentence prescribed by the habitual criminal statute.

Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction....

Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 290–92, 103 S.Ct. at 3009–11. Because *Solem*'s three-part test examines whether a sentence is proportionate to the *crime,* and whether the sentence is excessive compared with sentences given for such crimes in the same and other jurisdictions, the individual characteristics of the *criminal* are not at issue under the *Solem* test.

Relying on *Solem,* this court has held that an abbreviated form of the proportionality review articulated in *Solem* is required when a defendant, in either a habitual or a non-habitual offender case, challenges the constitutionality of a life sentence. *Smith,* 848 P.2d 365; *Gaskins,* 825 P.2d 30; *Alvarez,* 797 P.2d 37; *Drake,* 785 P.2d 1257; *Hernandez,* 686 P.2d 1325. As in *Solem,* our focus in conducting a proportionality review has consistently been whether the sentence is proportionate to the *crime* when considering the gravity of the offense and the harshness of the penalty. *Smith,* 848 P.2d 365; *Gaskins,* 825 P.2d 30; *Alvarez,* 797 P.2d 37; *Drake,* 785 P.2d 1257; *Hernandez,* 686 P.2d 1325.

In *Smith,* we held that Donald Eugene Smith's sentence to life imprisonment with no possibility of parole for forty years was not disproportionate, and did not violate the Eighth Amendment's prohibition against cruel and unusual punishment by virtue of Smith's age or his lack of prior felony convictions. *Smith,* 848 P.2d at 372. We found in *Smith* that the United States Supreme Court had already addressed and rejected the argument for individualized sentencing in non-capital cases based upon "mitigating" factors such as the age of the defendant. *Smith,* 848 P.2d at 374–75 (relying on *Harmelin,* —— U.S. ——, 111 S.Ct. 2680); *see Harmelin,* —— U.S. at ——, 111 S.Ct. at 2702.

Justice Scalia delivered the opinion of the Court in *Harmelin* with respect to part V of the opinion, wherein the *Harmelin* Court held that individualized sentencing—consideration of mitigating factors such as age—is only required in capital cases. *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2702. The *Harmelin* Court specifically considered the example of a sixty-five-year-old man sentenced to a term of life imprisonment without parole for twenty years, or even a lengthy term sentence without the possibility of parole, and acknowledged that, "[i]n some cases, ... there will be negligible difference between life without parole and other sentences of imprisonment." *Id.* Nevertheless, the *Harmelin* Court concluded that "[w]e have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further." *Id.*

Accordingly, in *Smith,* we expressly relied on *Harmelin* in concluding that mitigating factors such as the defendant's age and prior criminal record are irrelevant in determining whether a sentence is disproportionate in violation of the Eighth Amendment. *See Smith,* 848 P.2d at 374–75.[28] The *Harmelin* Court's holding that individualized sentencing is not required in

---

**28.** In *Smith,* we also considered federal cases from the Tenth and Eighth Circuit Courts of Appeals in concluding that age is not a relevant factor in proportionality analysis. *People v. Smith,* 848 P.2d 365, 375 (Colo.1993); *see United States v. O'Driscoll,* 761 F.2d 589, 599 (10th Cir.1985) ("A sentence of imprisonment for a very long term of years, the effect of which is to deny a prisoner eligibility for parole until a time beyond his life expectancy, does not violate the Eighth Amendment prohibition of imposition of cruel and unusual punishment."); *United States v. Murphy,* 899 F.2d 714, 719 (8th Cir.1990) (emphasis added) (holding that forty-year-old narcotics defendant's "present age is *irrelevant* to the validity of his sentences under the Eighth Amendment," and that, "[a]lthough the sentences are stringent, we hold that they do not violate the constitutional prohibition against cruel and unusual punishment"); *United States v. Mendoza,* 876 F.2d 639, 640–41 (8th Cir.1989) (holding that a fifteen-year sentence imposed upon a defendant convicted of narcotics offenses did not constitute cruel and unusual punishment in violation of the Eighth Amendment, even though the defendant suffered from chronic kidney failure, and claimed that his life expectancy was substantially shorter than normal).

non-capital cases is dispositive in the present actions.

 Based upon this court's previous holdings, as well as our examination of federal law, a defendant's age should not be considered in determining whether a sentence is disproportionate under the Eighth Amendment. *See Smith,* 848 P.2d 365; *Gaskins,* 825 P.2d 30; *Alvarez,* 797 P.2d 37; *Drake,* 785 P.2d 1257; *Hernandez,* 686 P.2d 1325; *Harmelin,* — U.S. ——, 111 S.Ct. 2680; *Solem,* 463 U.S. 277, 103 S.Ct. 3001; *United States v. Murphy,* 899 F.2d 714 (8th Cir.1990); *United States v. Mendoza,* 876 F.2d 639 (8th Cir.1989); *United States v. O'Driscoll,* 761 F.2d 589 (10th Cir.1985). Thus, we find that Cisneros and Ates are not entitled to an extended proportionality review simply because their respective life expectancies do not exceed the forty-year period of parole ineligibility.

## III.

We now consider whether an abbreviated form of proportionality review is appropriate in the present cases, and whether this court may conduct such a review in both *Cisneros* and *Ates.*

## A.

 In determining whether this court may conduct an abbreviated proportionality review under the existing record in both *Cisneros* and *Ates,* we must first examine the requirements of an abbreviated proportionality review. We held in *Gaskins* that

[t]he abbreviated review itself simply consists of a scrutiny of the *offenses* in question to determine whether *in combination* they are so lacking in gravity or seriousness as to suggest that a life sentence is constitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole.

*Gaskins,* 825 P.2d at 36 (emphasis added). Thus, under *Gaskins,* the critical inquiry is whether the offenses in question, *when examined in combination,* are lacking in gravity or seriousness. In *Gaskins,* we found that

[t]he determination of whether the crimes involved in a habitual criminal conviction are grave or serious necessarily is somewhat imprecise. *Solem* offers helpful guidance in evaluating the gravity of an offense. The Court observed that offenses can be compared "in light of the harm caused or threatened to the victim or society, and the culpability of the offender."

*Id.* (quoting *Solem,* 463 U.S. at 292, 103 S.Ct. at 3010). In *Gaskins,* we suggested the following relevant considerations in assessing the harm caused or threatened to society:

[R]elevant considerations include whether the crime involves violence, and the absolute magnitude of the crime (*e.g.,* theft of a large amount usually can be viewed as more serious than theft of a small amount, other circumstances being the same). In general, a lesser-included offense is not as serious as the greater-inclusive offense, an attempt is less serious than a completed crime, and an accessory after the fact should not be subject to a higher penalty than the principal.... Motive is also relevant.

*Id.* at 36–37 (citations omitted). This is not an exhaustive list of relevant factors; rather, this list illustrates that there are "generally accepted criteria for comparing the severity of different crimes on a broad scale, despite the difficulties courts face in attempting to draw distinctions between similar crimes." *Solem,* 463 U.S. at 294, 103 S.Ct. 3011; *see Gaskins,* 825 P.2d at 37.

We held in *Gaskins* that an abbreviated form of proportionality review was appropriate in that case. *Gaskins,* 825 P.2d at 37. In deciding whether the trial court or the appellate court should conduct the abbreviated proportionality analysis, we explained that,

[i]n the absence of a need for a refined analysis inquiring into the details of the specific offenses or a detailed comparison of sentences imposed for other crimes in this or other jurisdictions, an appellate court is as well positioned as a trial court to conduct a proportionality

review. In such circumstances, there is no need or justification for remand. . . .

In less clear cases, however, a court may need to examine the facts underlying the offenses in question in order to assess the harm caused or threatened to the victim or society and the culpability of the offender. . . . The proportionality review may require factual findings concerning the crime, the level of violence, and the other factors *Solem* identified in evaluating the severity of the crimes in question.

*Id.* at 37–38. Based upon the facts in *Gaskins*, we held that the court of appeals did not err in remanding the case to the district court to develop the factual record and conduct an abbreviated proportionality review. *Id.* at 39.

John Harvey Gaskins, the defendant in *Gaskins*, was convicted of third-degree assault, a class 1 misdemeanor,[29] and criminal attempt to commit theft, a class 5 felony.[30] In addition, Gaskins was also adjudicated as a habitual criminal. The first of Gaskins' three underlying felony convictions occurred in 1976, when Gaskins pleaded guilty to a charge of second-degree assault, a class 4 felony, for an assault on a police officer.[31] Gaskins' second felony conviction occurred in June of 1981, when a jury found him guilty of attempt to commit criminal trespass, a class 5 felony.[32] In August of 1981, Gaskins pleaded guilty to a charge of theft, a class 4 felony, for entering an apartment and taking a jacket, tie tack, and knife, and received his third felony conviction.[33] We concluded in *Gaskins* that "[n]one of the underlying crimes are intrinsically so grave or serious that the court of appeals can be held to have abused its discretion in remanding the case to a forum better adapted for development

of the facts and circumstances surrounding the crimes." *Id.*

We conducted an abbreviated form of proportionality review in *Alvarez, Drake,* and *Hernandez,* however, based upon the existing appellate record. *See Alvarez,* 797 P.2d at 38, 41 (defendant convicted of aggravated robbery, theft, and conspiracy to commit aggravated robbery and theft, and was adjudicated as a habitual criminal based upon previous convictions for second-degree burglary, criminal attempt to commit theft, first-degree criminal trespass, and criminal attempt to commit second-degree burglary); *Drake,* 785 P.2d at 1267 (defendant convicted of accessory to the crime of first-degree murder and as a habitual criminal based upon prior felony convictions for habitually giving a worthless check,[34] theft of property valued over $50,[35] and forgery[36]); *Hernandez,* 686 P.2d at 1329 (defendant convicted of second-degree burglary and conspiracy to commit second-degree burglary, and was adjudicated as a habitual criminal based upon prior convictions for six felonies including robbery and sale of narcotic drugs).

### B.

Based upon our examination of prior Colorado case law, we find in *Cisneros* that an abbreviated proportionality review is appropriate, and that this court "is as well positioned as a trial court to conduct [such] a proportionality review." *Gaskins,* 825 P.2d at 38; *see Alvarez,* 797 P.2d at 38; *Drake,* 785 P.2d at 1267; *Hernandez,* 686 P.2d at 1329.

Cisneros was convicted of two offenses in the case-in-chief: burglary and theft. The offenses underlying Cisneros' conviction as a habitual offender include three burglary offenses and one offense of

29. § 18–3–204, 8B C.R.S. (1986).

30. § 18–2–101, 8B C.R.S. (1986).

31. Gaskins received a sentence of four years' imprisonment for the 1976 conviction.

32. Gaskins received a sentence of eighteen months' imprisonment plus one year of parole for the June 1981 conviction.

33. The court sentenced Gaskins to four years' imprisonment plus one year probation for the August 1981 conviction.

34. Kan.Stat.Ann. § 21–3708.

35. Kan.Stat.Ann. § 21–3701.

36. Kan.Stat.Ann. § 21–3710.

receiving stolen property. We have previously noted that the offense of burglary "involve[s] violence or potential for violence by [its] very nature." *Gaskins*, 825 P.2d at 37. We conclude that, in combination, the six offenses committed by Cisneros meet the requisite requirement of gravity or seriousness to support a sentence of life imprisonment with eligibility for parole after forty years. We therefore find that Cisneros' sentence is not disproportionate in violation of the Eighth Amendment.

### C.

Similarly, in *Ates*, we conclude that the existing record is sufficient for the purpose of conducting an abbreviated proportionality review, and that, in the interest of judicial economy, this court should conduct such a review. *See Gaskins*, 825 P.2d at 38; *Alvarez*, 797 P.2d at 38; *Drake*, 785 P.2d at 1267; *Hernandez*, 686 P.2d at 1329.

This court and the United States Supreme Court have determined that the possession and sale of narcotic drugs are grave and serious offenses. *Harmelin*, — U.S. at —, 111 S.Ct. at 2706 (Kennedy, J., concurring in part and concurring in the judgment) ("Petitioner's suggestion that his crime [of possession of cocaine] was nonviolent and victimless ... is false to the point of absurdity. To the contrary, petitioner's crime threatened to cause grave harm to society."); *Gaskins*, 825 P.2d at 37 ("Sale of narcotic drugs is viewed with great seriousness because of the grave societal harm caused by sale of illegal drugs and the evils associated with their use.").

The crime of felony menacing with a knife is also grave or serious under the standard articulated in *Solem* and adopted by this court in *Gaskins*. Under *Solem*, courts may judge the gravity of an offense by comparing "the harm caused or threatened to the victim and society, and the culpability of the offender." *Solem*, 463 U.S. at 292, 103 S.Ct. at 3011; *see Gaskins*, 825 P.2d at 36. Under section 18–3–206, "[a] person commits the crime of menacing if, by *any threat or physical action, he knowingly places or attempts to place*

*another person in fear of imminent serious bodily injury.*" § 18–3–206, 8B C.R.S. (1986) (emphasis added). Felony menacing further requires the use of a deadly weapon. Felony menacing is a grave or serious offense under the standard announced in both *Solem* and *Gaskins* because, by definition, felony menacing involves the use of a deadly weapon to place, or attempt to place, another individual in fear of imminent serious bodily injury.

■ Ates' convictions for possession of a controlled substance (cocaine), sale of narcotic drugs (cocaine), felony menacing with a deadly weapon (a knife), and violation of bail bonds conditions, in combination, are not so lacking in gravity as to suggest that Ates' mandatory sentence of life imprisonment without the possibility of parole for forty years violates the Eighth Amendment's prohibition against cruel and unusual punishments. Accordingly, we conclude that Ates' sentence to life imprisonment without the possibility of parole for forty years is not disproportionate in violation of the Eighth Amendment.

### IV.

The judgments of the court of appeals in both *Cisneros* and *Ates* are reversed.

ERICKSON, J., specially concurs.

KIRSHBAUM, J., specially concurs in part and dissents in part, and LOHR and MULLARKEY, JJ., join in the special concurrence and dissent.

Justice ERICKSON specially concurring:

I join the majority opinion in its entirety and agree with the underlying conclusion that a defendant's age is irrelevant in determining whether a sentence is proportionate to a crime under the Eighth Amendment of the United States Constitution. Maj. op. at 828. I write separately to emphasize that our resolution of these cases is dictated by United States Supreme Court decisions addressing the Cruel and Unusual Punishment Clause of the Eighth Amendment.

Under the structure of our national system, a state court decision interpreting the federal Constitution is of course no less authoritative than a lower federal court decision. *Lockhart v. Fretwell*, — U.S. —, —, 113 S.Ct. 838, 846, 122 L.Ed.2d 180 (1993) (Thomas, J., concurring); *Steffel v. Thompson*, 415 U.S. 452, 482 n. 3, 94 S.Ct. 1209, 1227 n. 3, 39 L.Ed.2d 505 (1974) (Rehnquist, J., concurring). The Supreme Court, however, is the final judicial interpreter of the federal Constitution. *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); *Lujan v. Colorado State Bd. of Educ.*, 649 P.2d 1005 (Colo.1982).

As such, a state court is bound by Supreme Court precedent interpreting the federal Constitution and cannot impose greater limitations or afford more protections under the federal Constitution than the Supreme Court has in its decisions. *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *see, e.g., Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461–63 n. 6, 101 S.Ct. 715, 722–23 n. 6, 66 L.Ed.2d 659 (1981); *Fare v. Michael C.*, 442 U.S. 707, 717, 99 S.Ct. 2560, 2567, 61 L.Ed.2d 197 (1979); *North Carolina v. Butler*, 441 U.S. 369, 376, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979); *accord People v. Berger*, 185 Colo. 85, 88–89, 521 P.2d 1244, 1245 (1974); *American Fed'n of Labor v. Reilly*, 113 Colo. 90, 96, 155 P.2d 145, 148 (1944); *Wilcox v. People*, 46 Colo. 382, 384, 104 P. 408, 409 (1909); *Smith v. Farr*, 46 Colo. 364, 370, 104 P. 401, 403 (1909). Nor can a state court dictate a restriction as a matter of federal constitutional law that the Supreme Court has specifically refrained from imposing. *Hass*, 420 U.S. at 719, 95 S.Ct. at 1219.

In *Harmelin v. Michigan*, — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), Justice Scalia, writing for the majority, specifically refrained from requiring individualized sentencing for noncapital cases. *See id.* at —, 111 S.Ct. at 2702 ("[w]e have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further"). Following the Supreme Court's decision in *Harmelin*, it would contradict the axiomatic principles of *Hass* to interpret the Eighth Amendment as requiring consideration of mitigating factors such as the defendant's age in a noncapital case.

Justice KIRSHBAUM specially concurring in part and dissenting in part:

With unusual indifference to Eighth Amendment jurisprudence developed by the United States Supreme Court and by this court, the majority adopts a narrow rationale to reach the severely rigid conclusion that the age of a defendant is constitutionally irrelevant in cruel and unusual punishments challenges to sentences imposed upon recidivists in this state. Maj. op. at 828.[1] The majority also apparently concludes, contrary to our unanimous decision in *People v. Gaskins*, 825 P.2d 30 (Colo.1992), that trial and appellate courts have no discretion to determine the scope of proportionality review to be conducted in some circumstances and that this court is available to conduct a proportionality review in any recidivist sentencing case.

I cannot agree with those conclusions or with the rationale underlying them. In my view, based upon decisions of the United States Supreme Court and of this court exploring the extent of the prohibition against cruel and unusual punishments established by the Eighth Amendment, a defendant's age may be considered by trial or appellate courts in assessing the constitutional proportionality of a sentence. For reasons substantially different from those embraced by the majority, I concur in the majority's decision to conduct an abbreviated proportionality review of respondent Cisneros' sentence and to affirm that sentence. I also concur in the majority's apparent conclusion that the court of appeals

---

1. Inexplicably, the majority also holds that "Cisneros and Ates are not entitled to an extended proportionality review simply because their respective life expectancies do not exceed the forty-year period of parole ineligibility." Maj. op. at 828. If a defendant's age cannot be considered in a proportionality review of a sentence, the defendant's life expectancy, which is calculated on the basis of age, must also be irrelevant to either the substantive or procedural prongs of cruel and unusual punishments analysis.

erred in holding that Ates must be accorded an extended proportionality review as a matter of law. However, I respectfully dissent from the majority's reversal of the court of appeals conclusion that *People v. Ates* should be remanded to the trial court with directions that the trial court should conduct a proportionality review of the sentence imposed upon Ates. In view of our holding in *Gaskins*, I believe that the court of appeals had discretion to require the trial court to determine the proportionality of Ates' sentence and that the trial court had discretion to determine the scope of the proportionality review to be performed.

## I

## A

The history of United States Supreme Court adjudication of Eighth Amendment issues in the context of recidivist legislation includes five cases: *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); *McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); and *Moore v. Missouri*, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895).[2] However, in view of that court's diverse views regarding the historical origin and the scope and consequences of that amendment, *compare Harmelin v. Michigan*, —— U.S. ——, ——, 111 S.Ct. 2680, 2686, 115 L.Ed.2d 836 (1991) *with id.* at ——, 111 S.Ct. at 2709, any review of that Court's Eighth Amendment jurisprudence must include non-recidivist cases. Furthermore, the prohibition against cruel and unusual punishments contained in the Eighth Amendment is not limited to particular types of sentences.

The language of the Eighth Amendment reflects a fundamental acknowledgement of the essential dignity of each person and a concomitant recognition that legislative prerogatives of defining and punishing criminal conduct, while accorded great deference, are not absolute. *Coker v. Georgia*, 433 U.S. 584, 597, 97 S.Ct. 2861, 2868, 53 L.Ed.2d 982 (1977) (plurality opinion); *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (plurality opinion); *Trop v. Dulles*, 356 U.S. 86, 100, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958) (plurality opinion); *Weems v. United States*, 217 U.S. 349, 373, 30 S.Ct. 544, 551, 54 L.Ed. 793 (1910). *See Stanford v. Kentucky*, 492 U.S. 361, 391–92, 109 S.Ct. 2969, 2986–87, 106 L.Ed.2d 306 (1989) (Brennan, J., dissenting).

Prior to *Weems*,[3] but subsequent to the adoption of the Fourteenth Amendment, the Court had addressed Eighth Amendment issues in summary fashion, primarily in the context of challenges to particular modes of carrying out death penalties. *See, e.g., McElvaine v. Brush*, 142 U.S. 155, 12 S.Ct. 156, 35 L.Ed. 971 (1891) (rejecting Eighth Amendment challenge to provision of New York statute requiring solitary confinement of convicted murderers prior to their executions); *In re Kemmler*, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890) (rejecting Eighth Amendment challenge to provision of New York statute authorizing death by electricity for convicted murderers); *Wilkerson v. Utah*, 99 U.S. 130, 25 L.Ed. 345 (1879) (rejecting Eighth Amendment challenge to provision of Utah territorial statute authorizing judi-

**2.** The Court addressed the Eighth Amendment issues only cursorily in *Graham, McDonald,* and *Moore.*

**3.** Prior to the adoption of the Fourteenth Amendment, the Eighth Amendment was held applicable only to the United States Government. *Pervear v. Commonwealth*, 72 U.S. (5 Wall.) 475, 480, 18 L.Ed. 608 (1866); *Ex Parte Watkins*, 32 U.S. (7 Pet.) 568, 574, 8 L.Ed. 786 (1833). However, in *Pervear* the Court made the following observation in the course of rejecting various challenges to a Massachusetts stat-

ute imposing fines for maintaining a tenement for the sale or keeping of intoxicating liquors without appropriate license:

> We perceive nothing excessive, or cruel, or unusual in this. The object of the law was to protect the community against the manifold evils of intemperance. The mode adopted, of prohibiting under penalties the sale and keeping for sale of intoxicating liquors, without license, is the usual mode adopted in many, perhaps all of the States.

*Pervear*, 72 U.S. at 480.

cial designation of death by firing squad as means of execution for convicted murderers). *But see O'Neil v. Vermont*, 144 U.S. 323, 339–40, 12 S.Ct. 693, 699–700, 36 L.Ed. 450 (1892) (Field, J., dissenting) (provisions of Vermont statute permitting separate fines for each offense of selling intoxicating liquor without authority and authorizing sentence to prison at hard labor of three days for every dollar of fines and costs not paid by prescribed date, when applied to defendant conditionally sentenced to 19,914 days if fines and costs totaling $6,638.72 for 307 offenses not timely paid, violated Eighth Amendment prohibition "against all punishments which by their excessive length or severity are greatly disproportionate to the offences charged."). In *Weems*, the Court, for the first time, examined at length the history and scope of the Eighth Amendment. The Court held that a provision of the Philippine Constitution couched in language nearly identical to the terms of the Eighth Amendment prohibited the imposition of a sentence of *cadena temporal* upon a public official convicted of falsifying two expense vouchers with a combined value of 616 pesos. The sentence of *cadena temporal* included imprisonment for twelve years and one day at hard labor with a chain at the ankle and wrist.

Emphasizing that no prior case had required an exhaustive consideration of the scope of the Eighth Amendment, the *Weems* Court canvassed the history of the adoption of the Amendment, noting that commentators held different views concerning its purposes; [4] reaffirmed the principle that the Amendment prohibited blatantly barbaric modes of punishment; and stated that legislative authority to define and punish offenses, while normally unfettered, is limited by a principle of proportionality inherent in the purpose of the Amendment and implicit in the language thereof. To illustrate this proportionality principle the Court quoted language from Justice Field's dissent in *O'Neil* and dicta from *McDonald v. Commonwealth*, 173 Mass. 322, 53 N.E. 874 (1899), *aff'd*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901), a decision of the Supreme Judicial Court of Massachusetts ("imprisonment in the state prison for a long term of years might be so disproportionate to the offense as to constitute a cruel and unusual punishment," *McDonald*, 53 N.E. at 875). The *Weems* Court compared the penalty and the offense with other punishments and offenses defined by United States and Philippine Island legislation, declared the subject legislation to be unconstitutional, reversed the defendant's conviction, and dismissed the case.[5]

The Court addressed Eighth Amendment issues in various contexts only cursorily after its decision in *Weems* [6] until its deci-

**4.** Debates over the sources influencing the adoption of the Eighth Amendment and the actual knowledge and intent of those who drafted its language has not abated. *Compare* Anthony F. Granucci, *"Nor Cruel and Unusual Punishments Inflicted:" The Original Meaning*, 57 Cal.L.Rev. 839 (1969); Deborah A. Schwartz and Jay Wishingrad, *The Eighth Amendment, Beccaria, and the Enlightenment: An Historical Justification for the Weems v. United States Excessive Punishment Doctrine*, 24 Buff.L.Rev. 783 (1975); Thomas E. Baker and Fletcher N. Baldwin, Jr., *Eighth Amendment Challenges to the Length of a Criminal Sentence: Following the Supreme Court "From Precedent to Precedent"*, 27 Ariz. L.Rev. 25 (1985) *with* Note, *The Cruel and Unusual Punishment Clause and the Substantive Criminal Law*, 79 Harv.L.Rev. 635 (1966) *and* Charles W. Schwartz, *Eighth Amendment Proportionality Analysis and the Compelling Case of William Rummel*, 71 J.Crim.L. & Criminology 378 (1980).

**5.** Some commentators have read *Weems* narrowly to hold only that the Eighth Amendment prohibits barbaric modes of punishment. *See, e.g.*, William H. Mulligan, *Cruel and Unusual Punishments: The Proportionality Rule*, 47 Ford. L.Rev. 639 (1979). This view does not explain the majority's references to other punishments for other offenses or the fact that Justice White's dissent concluded that the Amendment does not contain a proportionality principle.

**6.** *See Badders v. United States*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916) (Eighth Amendment challenge to federal statute authorizing separate fines for separate mail fraud offenses rejected in single statement no ground existed for declaring the punishment unconstitutional); *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912) (Eighth Amendment challenge to West Virginia recidivist statute requiring life sentence for defendant twice previously sentenced to confinement in penal institu-

sion in *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). That case arose in the context of a civil action filed by Trop against the United States Secretary of State and others seeking a declaration that he was a United States citizen. Because he had earlier been convicted of desertion in a court martial proceeding for leaving his foreign military base without authorization for one day, Trop lost his citizenship by virtue of a provision of the Nationality Act of 1940, Pub.L. No. 853, § 401(g), 54 Stat. 1137, 1168–69 (1940) (amended by Pub.L. No. 221, § 1, 58 Stat. 4, 4 (1944)). Although a majority of the Court concluded that the statutory provision at issue was unconstitutional, prophetically, the Court disagreed respecting the reasons for that conclusion. Chief Justice Warren authored a plurality opinion that found the legislation violative of the Eighth Amendment. Noting that the scope of the Eighth Amendment remained unclear, the plurality opinion described it as follows:

> The phrase in our Constitution was taken directly from the English Declaration of Rights of 1688, and the principle it represents can be traced back to the Magna Carta. The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards. Fines, imprisonment and even execution may be imposed depending upon the enormity of the crime, but any technique outside the bounds of these traditional penalties is constitutionally suspect. This Court has had little occasion to give precise content to the Eighth Amendment, and, in an enlightened democracy such as ours, this is not surprising. But when the Court was confronted with a punishment of 12 years in irons at hard and painful labor imposed for the crime of falsifying public records, it did not hesitate to declare that the penalty was cruel in its excessiveness and unusual in its character.

*Trop*, 356 U.S. at 100, 78 S.Ct. at 597 (Opinion of Warren, C.J.) (footnotes and citation omitted). The plurality recognized "that the words of the Amendment are not precise, and that their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* at 100–01, 78 S.Ct. at 597–98 (footnote omitted). The plurality then referred to the treatment of deserters in eighty-four nations in the course of concluding that a punishment of denationalization for the offense of desertion was unconstitutional.

In spite of its uncertainty as to the origin and scope of the Eighth Amendment, in *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Court held that a California statute punishing the medical status of drug dependency violated the Amendment.[7] In finding the Amendment applicable to legislative definitions of offenses as well as to legislative determinations of sanctions, the Court made the following observation:

> To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the "crime" of having a common cold.

*Id.* at 667, 82 S.Ct. at 1421. As in *Trop* and *Weems*, the Court in *Robinson* suggested that concern for human dignity lies at the heart of the Amendment.

tions rejected in single statement that cruel and unusual punishment had not been inflicted on the defendant). In *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463–64, 67 S.Ct. 374, 376–77, 91 L.Ed. 422 (1947), the Court held that a convicted murderer was not subjected to a constitutionally impermissible method of punishment when a second gubernatorial warrant authorizing death by electrocution was issued because an initial effort to electrocute the defendant was unsuccessful due to an equipment malfunction. Due to the unique circumstances of the cases, none of the opinions considered questions of proportionality.

7. The Court also held in *Robinson* that the due process clause of the Fourteenth Amendment made the Eighth Amendment directly applicable to the states. *Robinson*, 370 U.S. at 666–67, 82 S.Ct. at 1420–21.

Further discussions by the Supreme Court concerning the scope of Eighth Amendment jurisprudence appear in several death penalty cases, commencing with the ten opinions delivered in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). These cases reveal the Court's consistent recognition that the proportionality component of the Eighth Amendment reflects constitutional concern for human dignity. For example, in *Coker*, the Court, in holding unconstitutional a Georgia statute requiring imposition of a sentence to death for the offense of rape of an adult woman, stated that the "Eighth Amendment bars not only those punishments that are 'barbaric' but also those that are 'excessive' in relation to the crime committed." *Coker*, 433 U.S. at 592, 97

S.Ct. at 2866. In *Enmund*, the Court held that the imposition of a sentence of death upon a person convicted of felony murder and robbery who did not commit any murder, was not present at the site of any murders, and did not intend that any murder should occur violated the Eighth Amendment. Emphasizing the particular circumstances of the offense and the conduct of the defendant, the Court concluded that the death penalty, which is "unique in its severity and irrevocability," was excessive and grossly disproportionate when imposed on a robber who did not take human life. *Enmund*, 458 U.S. at 797, 102 S.Ct. at 3376 (quoting *Gregg*, 428 U.S. at 187, 96 S.Ct. at 2931). In *Tison*, 481 U.S. 137, 151–52, 107 S.Ct. 1676, 1684–85, the Court reaffirmed the principle that consideration of Eighth Amendment challenges to death sentences requires consideration of the particular conduct of the defendant. *See Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989) (application of *Solem* proportionality analysis appropriate in determining whether the imposition of death penalties on juveniles survived cruel and unusual punishments challenge). Thus proportionality analysis in non-capital as well as in capital cases requires consideration to some extent of the nature of the relevant offenses as well as the characteristics of particular punishments.[8]

---

**8.** Cases addressing Eighth Amendment challenges to conditions of incarceration also illustrate recognition of this principle. *See Helling v. McKinney*, —— U.S. ——, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *Cf. Schick v. Reed*, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974). *See also Naovarath v. State*, 105 Nev. 525, 779 P.2d 944, 947 (1989), quoting unpublished draft opinion, Box 171, Harold Hitz Burton Papers, Library of Congress, *quoted in* D. Danelski, "The Riddle of Frank Murphy's Personality and Jurisprudence," 13 Law & Social Inquiry 196 (1988), as follows:

> More than any other provision in the Constitution the prohibition of cruel and unusual punishment depends largely, if not entirely, upon the humanitarian instincts of the judiciary. We have nothing to guide us in defin-

ing what is cruel and unusual apart from our consciences. A punishment which is considered fair today may be considered cruel tomorrow. And so we are not dealing here with a set of absolutes. Our decision must necessarily spring from the mosaic of our beliefs, our backgrounds and the degree of our faith in the dignity of the human personality.

In a recent decision addressing Eighth Amendment issues, the Court held the amendment and its statutorily based proportionality principle applicable to civil forfeitures of property seized in connection with drug-related offenses. *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The Court held that such in rem forfeitures should be deemed punishments for Eighth Amendment purposes, emphasizing that the amendment was designed to limit the government's power to punish. *Id.* at ——, 113 S.Ct. at 2803–04. The majority indicated that in developing appropri-

It must also be emphasized, however, that the proportionality principle of the Eighth Amendment also reflects great deference to the sentencing prerogative of the legislative branch of government. *Harmelin v. Michigan,* —— U.S. ——, ——, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836 (1991); *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983); *Rummel v. Estelle,* 445 U.S. 263, 275–76, 100 S.Ct. 1133, 1139–40, 63 L.Ed.2d 382 (1980). This principle, rooted in separation of powers doctrine, acknowledges that legislatures are constitutionally responsible for defining criminal conduct and determining the sanctions appropriate to punish or deter such conduct. As a result, sentencing provisions adopted by legislatures will be declared constitutionally disproportionate by courts on only rare occasions. *Hutto v. Davis,* 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982); *Rummel,* 445 U.S. at 272, 100 S.Ct. at 1138.

In an effort to appropriately balance these two policies, the Supreme Court in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), adopted certain objective standards for Eighth Amendment proportionality review. The Court described those standards as follows:

> When sentences are reviewed under the Eighth Amendment, courts should be guided by objective factors that our cases have recognized. First, we look to the gravity of the offense and the harshness of the penalty.... Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction.... Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 290–92, 103 S.Ct. at 3009–11 (footnote omitted).

The difficulty of delineating objective standards for proportionality review is dramatically reflected by the Court's opinions in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and in *Solem.* In *Rummel,* the Supreme Court rejected a formula for evaluating proportionality claims adopted by the Court of Appeals for the Fourth Circuit in *Hart v. Coiner,* 483 F.2d 136 (4th Cir.1973), *cert. denied,* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974).[9] Three years later, in *Solem,* the Court essentially adopted the *Hart* test. *See Solem,* 463 U.S. at 310–11, 103 S.Ct. at 3020–21 (Burger, C.J., dissenting).

### B

As the foregoing review demonstrates, the proportionality prong of the Eighth Amendment prohibition against cruel and unusual punishments not only recognizes the significance of evolving standards of humanitarian principles but also accords great deference to legislative determinations of punishments. Our cases dealing with cruel and unusual punishments challenges to sentences imposed upon habitual offenders have also reflected this tension.

In *People v. Bergstrom,* 190 Colo. 105, 544 P.2d 396 (1975), we rejected the argument that the imposition of a life sentence under our recidivist statute upon a defendant convicted of possession of weapons by a previous offender violated the Eighth Amendment. The defendant had previously been convicted of the offenses of grand larceny, automobile theft, robbery, and

---

ate Eighth Amendment challenges to in rem tests in the context of forfeiture proceedings, lower courts could consider factors other than the relationship between the forfeited property and the offense. *Id.* at —— n. 15, 113 S.Ct. at 2812 n. 15.

**9.** In *Hart v. Coiner,* 483 F.2d 136 (4th Cir.1973), *cert. denied,* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974), the Court of Appeals for the Fourth Circuit held that a life sentence imposed upon a defendant convicted over a twenty-year period of time of perjury, writing a check for $50 on insufficient funds, and transporting forged checks totaling $140 over state lines under a West Virginia recidivist statute violated the Eighth Amendment. The court examined several factors in reaching its conclusion: the nature and gravity of the offense, including whether the offense was violent; the legislative purpose behind the severe punishment; other severe punishments adopted by the legislature; a comparison of punishments for recidivism adopted in other states; and a comparison of punishments for other offenses adopted in the same jurisdiction. *Id.* at 140–42.

burglary. We held that "[t]he habitual criminal act has been specifically upheld in spite of its increased penalty provisions [and] [t]he legislature may, within broad limits, decide the penalty for each offense." *Id.* at 108, 544 P.2d at 398–99 (citations omitted). Chief Justice Pringle dissented on the basis of his conclusion that "imposing life imprisonment under the circumstances of this case, where ordinarily the penalty would be at most five years, is so grossly disproportionate as to constitute cruel and unusual punishment under the Eighth Amendment." *Id.* at 112, 544 P.2d at 401 (Pringle, C.J., concurring in part and dissenting in part).[10]

Subsequently, in *People v. Gutierrez,* 622 P.2d 547 (Colo.1981), we held that a life sentence imposed upon an habitual offender[11] did not violate the Eighth Amendment. We rejected the defendant's argument that reliance on a nonviolent felony offense to support the habitual criminal charge constituted cruel and unusual punishment, finding that " 'the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal.' " *Id.* at 557 (quoting *Rummel v. Estelle,* 445 U.S. 263, 275, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980)). However, we left open the question of "[w]hether there might be circumstances in which a mandatory life sentence would constitute cruel and unusual punishment because the crimes supporting habitual criminal status taken together with the substantive crimes giving rise to the habitual criminal determination are so minor in nature...." *Id.*

In *People v. Hernandez,* 686 P.2d 1325 (Colo.1984), we concluded that a defendant asserting an Eighth Amendment challenge to a sentence to life imprisonment imposed pursuant to our recidivist statute need be accorded only an abbreviated proportionality review. Under then applicable legisla-

tion the defendant was eligible for parole consideration twenty years after the commencement of his confinement. *See* § 17–2–207, 8 C.R.S. (1978 & 1983 Supp.). The defendant, who was convicted of second degree burglary and conspiracy to commit second degree burglary in the case-in-chief had previously committed six other felonies: robbery, theft, attempt to commit second degree forgery, sale of narcotic drugs, second degree burglary and theft over $100, and possession of contraband.

We adopted the tri-partite test of *Solem* and concluded that an abbreviated proportionality review, utilizing only the first of the three *Solem* criteria, was sufficient to permit the determination that the sentence did not violate the Eighth Amendment's prohibition against cruel and unusual punishments. *Hernandez,* 686 P.2d at 1330. We observed that, unlike the South Dakota statute scrutinized in *Solem,* our recidivist statute provided for the possibility of parole. *Id.* Our conclusion that a comparison of the eight underlying offenses to the admittedly harsh sentence was sufficient reflected deference to the legislative determination of the appropriate sanction for repeat offenders as well as concern for the humanitarian principle of the proportionality prong of the prohibition against cruel and unusual punishments.

In *People v. Drake,* 785 P.2d 1257, 1275 (Colo.1990), we concluded that an abbreviated proportionality review was sufficient to enable us to reject a cruel and unusual punishments challenge to a life sentence imposed upon a defendant convicted of accessory to first degree murder who had previously committed three felonies. We noted that, as in *Hernandez,* the applicable sentencing provisions permitted parole consideration within twenty years after the defendant's initial confinement, and that such factor entered into the proportionality review to which the defendant was entitled.

---

**10.** Cases prior to *Bergstrom* in which we upheld cruel and unusual punishments challenges by persons sentenced as habitual criminals include *People v. Thomas,* 189 Colo. 490, 542 P.2d 387 (1975), and *Bernard v. Tinsley,* 144 Colo. 244, 355 P.2d 1098 (1960), *cert. denied,* 365 U.S. 830, 81 S.Ct. 718, 5 L.Ed.2d 708 (1961).

**11.** In view of the provisions of our habitual criminal statute, § 16–13–101(2), 8A C.R.S. (1986), I employ the article "an" to modify the term "habitual offender" or "habitual criminal."

In *Alvarez v. People,* 797 P.2d 37 (Colo. 1990), the defendant was convicted of aggravated robbery, theft and conspiracy to commit aggravated robbery and theft. He was also adjudicated to be an habitual criminal on the basis of four prior felony convictions of second degree burglary, attempt to commit second degree burglary, attempt to commit theft, and first degree criminal trespass. The applicable legislation, as in the cases here considered, permitted parole consideration only after the expiration of forty years from the initial confinement. § 17–22.5–104(2)(c), 8A C.R.S. (1986). Our conclusion that an abbreviated proportionality review was sufficient again reflected deference to the legislative selection of a sanction, while our adherence to the *Solem* requirement of evaluating the gravity of the underlying offenses reflected our recognition of the humanitarian prong of proportionality analysis. We arrived at that conclusion by emphasizing the gravity of the seven underlying offenses as well as recognizing the severity of the sanction adopted by the General Assembly. *Alvarez,* 797 P.2d at 41–42.

In *People v. Gaskins,* 825 P.2d 30 (Colo. 1992), we thoroughly reviewed our three prior decisions of *Hernandez, Drake,* and *Alvarez* as well as the then recent Supreme Court decision of *Harmelin v. Michigan,* — U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), in articulating criteria for determining the scope of the proportionality review required in cases presenting cruel and unusual punishments challenges to sentences imposed pursuant to our recidivist statute. The defendant in *Gaskins* was convicted of two felonies in the case-in-chief: third degree assault and attempt to commit theft. He was also convicted of being an habitual offender on the basis of three prior felony convictions: second degree assault on a police officer, attempt to commit criminal trespass, and theft. Under applicable legislation, the defendant was not eligible for parole until forty years after the commencement of his confinement. § 17–22.5–104(2)(c), 8A C.R.S. (1986). The court of appeals vacated the defendant's sentence and remanded the case to the trial court with directions to conduct a proportionality review thereof. The court concluded that the trial court was in a better position to conduct the review because examination would focus on the defendant's entire record rather than only on the gravity of the two offenses for which he had been convicted in the case-in-chief. *Gaskins,* 825 P.2d at 32.

We affirmed the judgment of the court of appeals on the ground that it did not abuse its discretion in ordering the trial court to conduct the requisite proportionality review of the defendant's sentence as an habitual criminal. *Gaskins,* 825 P.2d at 32, 39. However, we emphasized that in most circumstances the requisite proportionality review could be conducted by either an appellate or a trial court on the basis of information concerning the defendant's current and past convictions disclosed by the record. *Id.* at 38. We thus rejected the rationale of the court of appeals insofar as that rationale suggested that a trial court would always be in the best position to evaluate the gravity of relevant offenses.

In *Gaskins* we also rejected the argument that federal and state prohibitions against cruel and unusual punishments do not require proportionality review of habitual offender sentences because our statutes authorize parole consideration after some defined period of time and because "trivial misconduct" is not classified as a felony by the General Assembly. *Id.* at 34. Our decision thus underscored the significance of the humanitarian principle of the proportionality prong of cruel and unusual punishments analysis while acknowledging the judicial deference due legislative determinations of what conduct is criminal and what sanctions are appropriate for such conduct.

Our decision in *Gaskins* delineated the criteria applicable to the determination of the scope of the proportionality review required of sentences imposed pursuant to our recidivist statute. We indicated that in most circumstances the review will be limited to an examination of the harshness of the sentence and the gravity of all relevant offenses, including the offenses underlying

the habitual criminal conviction, on the basis of the information contained in the record of the case. *Id.* at 36. If the examination of the record convinces the trial or appellate court that no further inquiry into the circumstances of the commission of any of the relevant offenses in question is necessary and that such offenses in combination are not so lacking in gravity as to raise an inference that the penalty, however harsh, is constitutionally disproportionate, no further review will be necessary. *Id.* In this scenario, the court will have properly applied the first of the three *Solem* criteria, albeit in a limited or abbreviated manner requiring examination only of the record before it.

However, we also recognized that because application of even the first of the three *Solem* criteria requires an assessment of the gravity of specific offenses, in rare circumstances the court conducting the proportionality review might conclude that matters not disclosed by the record of the trial proceedings should be considered. *Gaskins*, 825 P.2d at 38. Any such record would in all probability contain ample evidence of the circumstances surrounding the commission of the offenses underlying the defendant's conviction or convictions in the case-in-chief. Such record might not, however, contain sufficient information regarding the circumstances surrounding the commission of a particular offense underlying the defendant's conviction as an habitual offender to permit a thorough assessment of the gravity thereof. If the court were to conclude that evidence outside the record is necessary to permit proper application of the first of the three *Solem* criteria or to determine whether application of one or more of the other *Solem* criteria would be appropriate, some form of extended proportionality review would be required.[12] *Gaskins*, 825 P.2d at 38.

Of course, the court might ultimately conclude, on the basis of limited additional evidence, that the question of constitutional proportionality may be determined without the introduction of evidence comparing sentences imposed for the same or other crimes in this or other jurisdictions. *Id.* at 38 n. 13. The question of whether a particular habitual offender should be accorded an abbreviated or an extended proportionality review thus turns on the discretionary judicial determination of whether evidence in addition to matters contained in the record is necessary to conduct the review.

We recently reaffirmed the analysis and holding of *Gaskins* in *People v. Smith,* 848 P.2d 365 (Colo.1993). In *Smith,* the trial court, pursuant to section 16–11–103, 8A C.R.S. (1986 & 1989 Supp.), imposed a mandatory sentence of life imprisonment without the possibility of parole for forty years on a defendant convicted of the offense of first degree murder. On appeal the defendant argued, *inter alia,* that the sentence violated the "spirit of the Eighth Amendment."[13] In rejecting that challenge, we noted that in *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a majority of the Supreme Court held in Part V thereof that in non-capital cases the Eighth Amendment does not encompass the individualized sentencing principle that must infuse sentencing procedures in capital cases. *Id.* at ——, 111 S.Ct. at 2702. We emphasized the *Harmelin* majority's observation that imposition of a mandatory sentence of life imprisonment without possibility of parole in the absence of consideration of mitigating factors such as the defendant's lack of prior convictions did not violate the Eighth Amendment, *Smith,* 848 P.2d at 375, and discussed four federal Court of Appeals decisions: *United States v. O'Driscoll,* 761

12. A defendant sentenced as an habitual offender might seek to establish that, for purposes of constitutional proportionality review, the circumstances surrounding the commission of a particular prior offense supports the conclusion that the offense was not substantially grave.

13. The defendant's entire proportionality argument consisted of the following two sentences:

> The automatic and impliedly objective and non-quantitative imposition of [the] statutory sentence in the instant situation denied the defendant of [sic] any type of proportionality consideration. The automatic sentencing of a twenty year old offender with no prior felony record is repugnant to the spirit of the Eighth Amendment Constitutional prohibition against Cruel and Unusual punishment.

F.2d 589 (10th Cir.1985), *United States v. Abreu*, 962 F.2d 1425 (10th Cir.1992), *United States v. Murphy*, 899 F.2d 714 (8th Cir.1990), and *United States v. Mendoza*, 876 F.2d 639 (8th Cir.1989). We then concluded our analysis as follows:

> Based upon the foregoing analysis and the facts of this case, we find that Smith's statutorily mandated sentence of life in prison with no possibility of parole for forty years for committing the crime of first degree murder is not disproportionate, and does not violate the Eighth Amendment.

*Smith*, 848 P.2d at 375.

## II

The foregoing review of decisions of the United States Supreme Court and of our court requires the conclusion that a defendant's age is a relevant factor in assessing whether a sentence imposed is unconstitutionally disproportionate. A person's age is a question of historical fact. Consideration of the effect of a defendant's life expectancy on the results of a sentence necessarily requires consideration of the defendant's age. *See O'Driscoll*, 761 F.2d at 599; *Mendoza*, 876 F.2d at 640. A defendant's age is no less objective a factor than the fact of a person's history of prior convictions. Moreover, we noted in *Gaskins* that the determination of whether particular crimes were particularly grave for purposes of proportionality review was "somewhat imprecise," *Gaskins*, 825 P.2d at 36, and that such factors as mens rea and motive could in some circumstances be considered. *Id.* at 37. We thus acknowledged in *Gaskins* that in some circumstances specific information about an offender could be relevant for purposes of proportionality review. *See also Solem*, 463 U.S. at 297 n. 22, 103 S.Ct. at 3013 n. 22 ("Helm, who was 36 years old when he was sentenced, is not a professional criminal. The record indicates an addiction to alcohol, and a consequent difficulty in holding a job. His record involves no instance of violence of any kind.") The majority concludes that any acknowledgement that age may be a relevant factor in cruel and unusual punishments analysis would contravene the conclusion in Part V of *Harmelin* that the doctrine of individualized sentencing is not applicable in non-capital Eighth Amendment cases and would turn proportionality review into a comparison of the sentence to the offender rather than a comparison of the sentence to the offense.

The majority thus equates *Harmelin*'s rejection of the individualized sentencing doctrine in the non-capital and non-recidivist context of that decision with rejection of consideration of a defendant's age in all Eighth Amendment contexts, and then concludes that *Harmelin* is dispositive of the latter issue. Such reading of *Harmelin* would, of course, require our conclusion that defendant's age is irrelevant in cruel and unusual punishments analysis. U.S. Const. art. VI, ¶ 2. However, I do not construe *Harmelin* as establishing the inflexible principle adopted by the majority.

The doctrine of individualized sentencing discussed in part V of *Harmelin* refers to a discrete aspect of Eighth Amendment jurisprudence. In developing cruel and unusual punishments criteria, the Supreme Court has distinguished between capital sentences and all other sentences. "The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." *Furman v. Georgia*, 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring).

One important distinction between capital and non-capital cases is that in capital cases mandatory sentences are constitutionally forbidden. At the time the Bill of Rights was adopted, "States uniformly followed the common-law practice of making death the exclusive and mandatory sentence for ... offenses ... including at a minimum, murder, treason, piracy, arson, rape, robbery, burglary, and sodomy." *Woodson v. North Carolina*, 428 U.S. 280, 289, 96 S.Ct. 2978, 2984, 49 L.Ed.2d 944 (1976) (Opinion of Stewart, Powell, and Ste-

vens, JJ.) (footnotes omitted). When these sentences proved unworkable, primarily because juries not infrequently acquitted guilty defendants rather than sentence them to automatic death sentences, states eventually granted juries discretion to withhold death sentences in light of mitigating factors. *Id.* at 290–91, 96 S.Ct. at 2984–85.

In response to the Supreme Court's decision in *Furman,* wherein the death sentences found violative of the Eighth Amendment were described as "wantonly" and "freakishly imposed," *Furman,* 408 U.S. at 310, 92 S.Ct. at 2762 (Stewart, J., concurring), several states adopted mandatory death sentences for certain crimes in an effort to limit the sentencer's discretion. However, the Supreme Court concluded that sentencing schemes affording no discretion to the sentencer also violated the Eighth Amendment because they were unduly harsh and unworkably rigid, *Woodson,* 428 U.S. at 303, 96 S.Ct. at 2990; they failed to "focus on the circumstances of the particular offense and the character and propensities of the offender," *Roberts v. Louisiana,* 428 U.S. 325, 333, 96 S.Ct. 3001, 3006, 49 L.Ed.2d 974 (1976); and they "fail[ed] to provide a constitutionally tolerable response to *Furman*'s rejection of unbridled jury discretion in the imposition of [death]." *Woodson,* 428 U.S. at 302, 96 S.Ct. at 29.

As the Supreme Court continued to review different death sentencing schemes, a common theme emerged: " '[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.' " *Sumner v. Shuman,* 483 U.S. 66, 75, 107 S.Ct. 2716, 2722, 97 L.Ed.2d 56 (1987) (quoting *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991). Reiterating that " 'an individualized [sentencing] decision is essential in capital cases,' " the Court recently stated: " 'There is no perfect procedure for deciding in which cases governmental authority should be used to impose death. But a statute that prevents the sentencer in all capital cases from giving independent weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors that may call for a less severe penalty.' " *Graham v. Collins,* —— U.S. ——, ——, 113 S.Ct. 892, 899–900, 122 L.Ed.2d 260 (1993) (quoting *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion)). Thus under what has been commonly referred to as the individualized capital sentencing doctrine, the Eighth Amendment commands that "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law,* any relevant mitigating evidence." *Eddings v. Oklahoma,* 455 U.S. 104, 113–14, 102 S.Ct. 869, 876, 71 L.Ed.2d 1 (1982) (emphasis in original).

In *Harmelin,* the defendant, who was sentenced to a mandatory term of life without the possibility of parole upon conviction of possessing more than 650 grams of cocaine, argued that imposition of the mandatory sentence without consideration of his lack of a criminal record constituted cruel and unusual punishment. In concluding that the Eighth Amendment did not bar the mandatory sentence, the court refused to equate the effects of mandatory capital sentencing schemes with mandatory noncapital sentencing schemes. "Petitioner asks us to extend this so-called 'individualized capital-sentencing doctrine,' to an 'individualized mandatory life in prison without parole sentencing doctrine.' We refuse to do so.... We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further." *Harmelin,* —— U.S. at —— ——, 111 S.Ct. at 2701–02 (citation omitted).

*Harmelin* did not address the narrow question of whether a court conducting a proportionality review of an habitual offender's sentence may consider the offender's age. In refusing to apply the individualized sentencing doctrine of death-penalty

jurisprudence to the Eighth Amendment challenge there reviewed,[14] the majority neither expressly nor, in my view, by implication held that a defendant's age may never be considered in other cruel and unusual punishments contexts. This view of *Harmelin* is reinforced by the fact that seven of the justices recognized the continued vitality of *Solem*. The conclusion that a court may consider a defendant's age in conducting an extended proportionality review in non-capital cases by no means requires the additional conclusion that the broad individualized sentencing doctrine must be extended to other Eighth Amendment contexts.[15]

In my view, in *Gaskins* this court unanimously rejected the reading of *Harmelin* adopted by the majority. In *Gaskins* we recognized the *Harmelin* decision and then reaffirmed the applicability of the *Solem* criteria for evaluating the gravity of a particular offense. *Gaskins*, 825 P.2d at 34 n. 10, 36. We quoted that portion of *Solem* stating that offenses can be compared " 'in light of the harm caused or threatened to the victim or society, and the culpability of the offender.' *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010." *Gaskins*, 825 P.2d at 36. We then stated that in evaluating the culpability of the offender "[m]otive is also relevant," *id.* at 37, and observed that in certain exceptional cases "a court may need to examine the facts underlying the offenses in question in order to assess the harm caused or threatened to the victim or society and the culpability of the offender." *Id.* at 38. A principle of law that requires a court to ignore the defendant's age when evaluating that defendant's culpability in the course of an extended proportionality review ignores reality and requires adherence to the fiction that a defendant's age is never relevant to an evaluation of the defendant's culpability.[16] In my view, the rule adopted by the majority is not required by *Harmelin* and is incompatible with *Gaskins*.

Other courts have concluded that the defendant's age is a relevant factor in cruel and unusual punishments analysis. For example, in *Naovarath v. State*, 105 Nev. 525, 779 P.2d 944 (1989), the Supreme Court of Nevada concluded that in deciding whether a punishment was constitutional under the United States and Nevada Constitutions "it is necessary to look at both the age of the convict and at his probable mental state at the time of the offense." *Id.* 779 P.2d at 946. In that case a sentence of life imprisonment without possibility of parole was imposed upon a defendant who was convicted based on a guilty plea of an unspecified degree of murder. At the time of the offense, the defendant was thirteen years old and, according to the record, was psychotic, delusional and unable to distinguish reality from fantasy. After finding, in light of the defendant's age and mental state, that the sentence imposed would not further any of the generally accepted moral and social purposes of punishment, retribution, deterrence, and segregation, and after determining that the prohibition of cruel and unusual punishments depends largely upon the humanitarian instincts of the judiciary, the court concluded that the sentence imposed constituted cruel and unusual punishment under both the federal and state constitutions. Accordingly, the court ordered that a sen-

---

14. In *People v. Bullock*, 440 Mich. 15, 485 N.W.2d 866 (1992), the Michigan Supreme Court concluded that the statutory provision at issue in *Harmelin* violated the prohibition against "cruel or unusual punishment" established by art. 1, § 16, of the Michigan Constitution.

15. In *Austin v. United States*, — U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that in developing a test to determine whether a civil forfeiture imposed upon a drug offender violated the proportionality principle embodied in the Eighth Amendment, lower courts were free to consider factors other than the penalty and the gravity of the offense. This approach mirrors the flexibility we emphasized in *Gaskins* and supports the conclusion that rigid rejection of the specific factor of age is incompatible with cruel and unusual punishments jurisprudence in recidivist sentencing contexts.

16. In imposing punishment pursuant to statutes establishing ranges of sentences for a particular offense, trial courts routinely consider the age of a particular offender when selecting the appropriate period of incarceration.

tence of life with the possibility of parole be imposed. *See also Young v. Miller,* 883 F.2d 1276 (6th Cir.1989) (in assessing whether the sentence of life imprisonment without possibility of parole for possession with intent to deliver 650 grams or more of heroin constituted cruel and unusual punishment, court considers age of defendant), *cert. denied,* — U.S. —, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991); *United States v. Darby,* 744 F.2d 1508 (11th Cir.1984) (in assessing whether sixty-year prison term constituted cruel and unusual punishment, although court refuses to equate a lengthy sentence imposed upon defendants who were in their late forties and late fifties to imprisonment without possibility of parole, court states that "[w]ithout question, the probability that a defendant will spend the rest of his life in prison is a relevant consideration," *id.* at 1526 n. 10), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985); *Rogers v. State,* 257 Ark. 144, 515 S.W.2d 79 (1974) (life imprisonment without possibility of parole for first degree rape conviction imposed upon defendant, age 17 at time of trial, held not cruel and unusual punishment), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975); *People v. Dillon,* 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697 (1983) (in finding that a sentence of life imprisonment imposed upon defendant convicted of first degree murder constituted an unconstitutional punishment under California Constitution, court considered age of defendant); *People v. Eshelman,* 225 Cal.App.3d 1513, 275 Cal.Rptr. 810 (1990) (in assessing whether a sentence of seventeen years' imprisonment for the crime of second degree murder constituted cruel and unusual punishment, court considers age of defendant); *State v. Broadhead,* 120 Idaho 141, 814 P.2d 401 (1991) (a sentence of life imprisonment with the first 15 years fixed and the balance indeterminate for the crime of second degree murder imposed upon a defendant, age 14 at the time of the crime, held constitutional), *overruled on other grounds, State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *Workman v. Commonwealth,* 429 S.W.2d 374 (Ky.1968) (life imprisonment without possibility of parole for conviction of forcible rape imposed upon defendants, age 14 at time of crime, constituted cruel and unusual punishment under Kentucky Constitution).[17]

The majority's suggestion that many of these decisions are unpersuasive because they were decided prior to *Harmelin* is itself unpersuasive. Seven members of the *Harmelin* court recognized the continuing vitality of *Solem.* Thus, as we recognized in *Gaskins,* the humanitarian principle of cruel and unusual punishments analysis culminating in *Solem* was reaffirmed in *Harmelin.* The majority's conclusion that the defendant's age is not relevant in cruel and unusual punishments analysis prohibits Colorado courts from considering such challenges to lengthy sentences by very young offenders as was successfully argued to the Nevada Supreme Court in *Naovarath.* I find the rationale and result of that decision compelling as well as convincing.

The conclusion that age and life expectancy are relevant factors in cruel and unusual punishments analysis for assessing the harshness of a particular sentence and, in an extended proportionality review, the gravity of a particular offense does not

---

**17.** In *United States v. Murphy,* 899 F.2d 714, 719 (8th Cir.1990), the court observed that the defendant's "present age is irrelevant to the validity of his sentences under the Eighth Amendment" in rejecting a forty-year-old defendant's argument that concurrent sentences, the longest of which was for twenty-five years, were constitutionally disproportionate. The defendant was convicted of three separate offenses: distribution of methamphetamine, aiding and abetting the distribution of methamphetamine, and conspiracy to distribute and to possess with intent to distribute cocaine and methamphetamine. However, the court also stated that "the sentences are stringent," *id.,* thus acknowledging the defendant's argument that because of his age the sentence amounted to a life sentence without possibility of parole. In view of the gravity of the three offenses, no extended review was necessary. To the extent the quoted sentence may be construed to suggest a conclusion that the factors of a defendant's age and life expectancy can never be deemed relevant for any purpose in limited or extended proportionality review, I would adhere to our decision in *Gaskins* to reject so narrow a construction of Eighth Amendment jurisprudence.

suggest that such factors are controlling or that they or any other particular circumstances must be explored in every case in which a defendant asserts an Eighth Amendment challenge to a sentence. As we emphasized in *Gaskins*, 825 P.2d at 36, the initial judicial weighing may consist of a brief consideration of the gravity of the offense and the harshness of the sentence. *See People v. Smith*, 848 P.2d 365 (Colo. 1993) (no extensive analysis necessary when sentence of life imprisonment with parole eligibility in forty years imposed for offense of first degree murder). The question in most such cases is not whether the sentencing scheme is constitutional, but rather whether the particular sentence imposed under a constitutional statute nevertheless violates Eighth Amendment proportionality standards. *See State v. Bartlett*, 171 Ariz. 302, 303 n. 8, 830 P.2d 823, 829, 830 n. 8, *cert. denied*, — U.S. —, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992). Only when a court in its discretion concludes that an extended review is warranted will evidence of such matters be admissible. *See Gaskins*, 825 P.2d at 37. Thus a court's determination in a particular case that an extended proportionality review is warranted does not authorize the defendant to introduce general evidence of his or her personal characteristics in mitigation. The issues are limited at all times to comparisons of the harshness of the sentence with the gravity of the offense.

The conclusion that the court of appeals did not err in finding age to be a relevant factor in cruel and unusual punishments analysis and that, considering that factor, Cisneros and Ates received harsh penalties does not require the further conclusion that they must be accorded extended proportionality reviews. The question of the appropriate scope of proportionality review for sentences imposed upon habitual offenders initially requires both an evaluation of the severity of the particular sentence and the gravity of the particular underlying offenses on the record to determine whether an inference of disproportionality has been established requiring additional review. *Id.* at 36. In these cases, the court of appeals in effect concluded

that Cisneros and Ates were entitled to extended proportionality reviews simply because their sentences were extremely harsh. Such analysis improperly fails to assess the gravity of the underlying offenses on the record before deciding whether extended proportionality reviews are required. Extremely harsh sentences are not constitutionally disproportionate when imposed for the commission of grave offenses.

### III

Turning now to the majority's disposition of these cases, I agree that in the case of *People v. Cisneros*, 824 P.2d 16 (Colo.App. 1991), this court is competent to conduct an abbreviated proportionality review and that such review is sufficient to establish that the sentence imposed does not violate the Eighth Amendment. However, I disagree with the majority's decision to conduct an abbreviated review of the sentence in *People v. Ates*. In my view, the court of appeals properly exercised its discretion in determining that the case should be remanded to the trial court. Although the court of appeals erred in requiring the trial court to conduct an extended proportionality review, I believe the trial court is in a far superior position to determine the scope of the review.

### A

In *People v. Cisneros*, the trial court denied Cisneros' motion to conduct a proportionality review. The trial court erroneously concluded that proportionality review was not required because the applicable sentencing statutes provided for the possibility of parole. Some form of proportionality review is required when a defendant challenges a sentence imposed pursuant to our recidivist statute. *Gaskins*, 825 P.2d at 34. The determination of the scope of the requisite proportionality review requires an initial evaluation of the severity of the sentence and the gravity of the underlying offenses. The record contains sufficient information to permit this court to determine that the sentence imposed

upon Cisneros does not violate the Eighth Amendment's prohibition against cruel and unusual punishments and that no extended proportionality review is required. Thus I concur in the result reached by the majority with respect to this case.

### B

While the record in *People v. Cisneros* contains sufficient information to permit this court to conduct an abbreviated proportionality review, the record in *People v. Ates* does not. I therefore conclude that the court of appeals did not abuse its discretion in remanding the case to the trial court with directions to conduct an appropriate proportionality review. The court of appeals did err, however, in concluding that Ates was entitled to an extended proportionality review as a matter of law. In my view, the scope of the proportionality review should be determined by the trial court in its discretion.

Prior to trial, Ates moved to dismiss the habitual criminal charge filed against him. Relying upon *People v. Gutierrez*, 622 P.2d 547 (Colo.1981), he argued that the three offenses underlying the habitual criminal charge were so minor in nature that sentencing pursuant to the recidivist statute would constitute a cruel and unusual punishment. Those offenses included a conviction for the offense of sale of narcotic drugs, a conviction for the offense of menacing by use of a deadly weapon, and a conviction for the offense of violating bail bond conditions. The trial court expressed reservations about the gravity of the offense of violating bail bond conditions, but stated that in view of the legislative classification of that offense as a felony punishable by imprisonment for up to eight years it was not a minor offense. The trial court also stated that the other offenses underlying the habitual offender charge were "not minor" and denied the motion. However, because Ates did not ask the trial court to conduct a proportionality review subsequent to his conviction, it did not consider all the relevant offenses.

We stated in *Gaskins*, 825 P.2d at 37, that the offense of sale of narcotic drugs is viewed with great seriousness. Thus, for purposes of cruel and unusual punishments analysis, the record establishes that Ates' 1981 conviction is a conviction for a grave offense.

However, while the offense of menacing with a deadly weapon would appear by its very definition to involve a threat of harm or violence to another, the record suggests that Ates' conduct in the course of committing that offense might not have placed others in jeopardy. The offense is defined as follows:

> **Menacing.** A person commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, if committed by the use of a deadly weapon, it is a class 5 felony.

§ 18–3–206, 8B C.R.S. (1986). We have held that the gist of this offense is the intent to cause fear, not the intent to cause injury. *People v. McPherson*, 200 Colo. 429, 432, 619 P.2d 38, 40 (1980); *People v. Stout*, 193 Colo. 466, 467, 568 P.2d 52, 53 (1977). While the use of a deadly weapon exacerbates the potential for violence or harm, the circumstances surrounding the commission of the offense might warrant the conclusion that as committed the offense was not substantially grave for purposes of cruel and unusual punishments analysis.

The record of Ates' conviction for the offense of menacing with a deadly weapon consists of copies of the complaint and information, the trial court's minute orders, a mittimus, and an amended mittimus. The record also contains copies of fingerprint charts and photographs. The complaint and information initially charged Ates with two offenses of menacing with a deadly weapon occurring on the same date but involving two separate victims. One of the charges was dismissed at the conclusion of a preliminary hearing. Ates was convicted of the remaining charge after a bench trial. Because the offense of menacing encompasses a broad range of conduct, further information concerning the circumstances

of the offense as committed by Ates might be deemed significant by a court evaluating the severity of that offense for proportionality purposes.

If the record clearly established that all but one of the four relevant offenses in this case were very grave for purposes of proportionality review, an abbreviated review would no doubt prove sufficient to warrant the conclusion that in combination the underlying offenses were of sufficient gravity to warrant the harsh penalty imposed upon Ates. However, the record also suggests questions with respect to the gravity of the offense of violation of bail bond conditions. The record of that conviction consists of a transcript of the providency hearing, copies of the information and the trial court's minute orders, and copies of fingerprints and photographs. The trial court's minute orders reflect that Ates was convicted of felony menacing on June 3, 1986; that a sentencing hearing was set for July 11, 1986, and Ates' bond was continued to that date; that on July 11, 1986, the sentencing hearing was continued to August 1, 1986, and Ates' bond was revoked; that on July 17, 1986, Ates was released from custody; and that on August 1, 1986, Ates did not appear for the scheduled sentencing hearing. The transcript of the providency hearing contains testimony by Ates explaining his failure to appear at the August 1, 1986, hearing. A court conducting a proportionality review might conclude that further information concerning the characteristics of this offense would be appropriate in assessing its gravity.

The record thus suggests that two of the offenses underlying the habitual offender charge filed against Ates may not be particularly grave offenses. In these circumstances, I conclude that the trial court is more appropriately positioned to determine on the basis of the record whether all the offenses, including the offenses for which Ates was convicted in the case-in-chief, are in combination of sufficient gravity to permit the conclusion that the sentence is not constitutionally disproportionate or whether further information not contained in the record would be required to permit such conclusion.

The majority has determined in these cases that this court should conduct limited proportionality reviews without considering the ages of Cisneros and Ates. While this court is as capable as any other Colorado court to conduct a limited proportionality review, *Gaskins* holds that appellate courts also have discretion to require trial courts to conduct proportionality reviews in particular cases. The court of appeals exercised such discretion in *People v. Ates;* under the circumstances, its decision to remand the case did not constitute an abuse thereof. By electing to reverse the court of appeals decision, the majority invites appellants and appellees unhappy with lower court decisions respecting Eighth Amendment challenges to seek relief from this court. Such prospect will impair, rather than enhance, judicial economy. I would follow *Gaskins* in according lower courts discretion to determine what objective factors may be relevant in particular cases involving Eighth Amendment challenges. *See Austin v. United States,* ——— U.S. ———, ——— n. 15, 113 S.Ct. 2801, 2812 n. 15, 125 L.Ed.2d 488 (1993).

### IV

The majority opinion precludes this and all other Colorado courts from considering the age of a defendant for any purpose in responding to Eighth Amendment challenges to habitual offender sentences. While one federal appeals court has stated that age is irrelevant to cruel and unusual punishments analysis, other federal and state courts have not ascertained so rigid a constraint on the humanitarian principles embodied in that amendment. The majority has also decided to conduct a limited proportionality review in a case wherein it has not found that the court of appeals abused its discretion in remanding the case to the trial court for a proportionality review. I disagree with those conclusions and with the rationale underlying them, and therefore concur specially in the result in *People v. Cisneros* and respectfully dissent in *People v. Ates.*

I am authorized to state that Justice LOHR and Justice MULLARKEY join in this special concurrence and dissent.